OF THE

# COURT OF APPEALS OF KENTUCKY.

8b 415
90 392

## WINTER TERM, 1871.

CASE 1—PETITION EQUITY—DECEMBER 5.

## Louisville City Railway Co. v. City of Louisville.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. THE CITY OF LOUISVILLE CAN REQUIRE THE TRAM-RAIL TO BE SUB-
STITUTED FOR THE CRESCENT-RAIL, USED IN THE STREET RAILWAY
TRACKS constructed by the Louisville City Railway Company,
under a contract with the city for the right of way, etc., in which
it was stipulated that the *most approved rail* should be used, etc.

The law under which the contract was made reserved to the city
council the right to regulate and control such railways as it may
authorize to be laid down and operated in the streets and highways
of the city.

All the streets in the city were bowldered or macadamized when
the railway tracks were constructed with the crescent-rail. The city
having inaugurated a system of street improvements by which the
"Nicolson" is gradually being substituted for the stone pavements,

(415)

required the railway company to take up its crescent and put down the tram-rail as the construction of the Nicolson pavement progressed.

It being agreed that the tram was the better rail for streets in which the Nicolson pavement was used: *Held*, that the city had the right to require the railway company to substitute the *tram* for the *crescent-rail*, at the cost of the railway company, as the construction of the Nicolson pavement progressed.

2. MUNICIPAL CORPORATIONS HAVE NO POWER TO LIMIT THEIR LEGISLATIVE DISCRETION BY COVENANT.—They may contract as individuals, but their legislative enactments must of necessity have the same effect upon their individual contracts as upon those of other persons, artificial or natural, or of the general public.

3. The city can not refuse to exercise its power to regulate and control its streets and highways when public necessity or convenience demands that it shall be done.

4. Nor can the city be allowed to excuse its failure in this particular upon the ground that it has by contract deprived itself of the right to act.

5. *The general council could not by contract deprive itself of the power* to regulate the reconstruction of railways made necessary by the changes in the character of pavement used upon the streets of the city.

6. *The city government has the general power to so regulate the use and enjoyment of private property* in the city as to prevent its proving pernicious to the citizens generally.

It may, when the use to which the owner devotes his property becomes a nuisance, compel him to cease to so use it, and punish him for refusing to obey its ordinances or regulations concerning such use.

7. The contract for the right of way, etc., between the city and the Louisville City Railway Company provided that the city shall not be liable for any damage "from any delay in the transportation of passengers that may be incurred by the laying of sewers, water or gas-pipes," etc. The company refused to take up its track to enable the city to construct a sewer, and thereupon the city caused the track to be taken up and refused to replace it. For thus taking up and refusing to replace the track the city did not become liable in damages to the railway company.

8. The city did not and could not surrender its right to construct sewers in such portions of its limits as might require them, and the railway company holds its right of way subject to this power.

Louisville City Railway Company v. City of Louisville.

BARRET & ROBERTS,  ⎫
HARLAN & NEWMAN, ⎭  . . . . . . . . For Appellant,
                    CITED
Act of February 15, 1864, incorporating the appellant.
Elliott's Digest of Laws and Ordinances of Louisville, 207.
4 Bush, 478.

T. L. BURNETT, ⎫
F. T. FOX, . . ⎭  . . . . . . . . . . For Appellee.

JUDGE LINDSAY DELIVERED THE OPINION OF THE COURT.

By an act approved February 15, 1864, the General Assembly incorporated the Louisville City Railway Company, with authority for and during the term of thirty years to construct, maintain, and operate single or double-track railways over and along such streets or highways within the city of Louisville as its general council might authorize, in such manner and upon such terms and conditions, and with such rights and privileges, as might be secured by contract with said general council, "as provided in an act for the benefit of Louisville, approved March 2, 1863." By this act the general council was empowered to have constructed a railroad or railroads, with single or double tracks, in such streets as might by resolution be designated, and it was provided "that to carry out the powers granted in section 1 of this act the general council may, by contract, sale, or bargain, empower any corporation or corporations, parties or company, to construct said street-railroads, the general council reserving all rights to regulate and control the same."

On the 9th of August, 1864, an agreement was entered into between the appellant and the general council of the city of Louisville by which the latter consented that the former might construct and operate a street-railroad or railroads over and along certain streets, among which was Jefferson Street from Twelfth Street to its junction with the Bardstown Turnpike. The right of appellant to operate its railroads was to continue

VOL. VIII.—28

thirty years, and until the city should elect to purchase its tracks, cars, grounds, etc., and pay therefor in the manner set out in the agreement.

Among other things this contract stipulated by its seventh section that "all railway tracks constructed by the Louisville City Railway Company under this agreement shall be of the gauge of four feet, and of the most approved rail, and the same shall be laid in the best manner and according to the mode of construction of the best street-railroads in other cities of the country, and in such manner as to be the least impediment to the ordinary use of the streets, with suitable crossings at the gutters so as to permit the flow of water under the same, and on such present grades of the streets, or on such grades as the general council may hereafter establish; and said roads shall be laid in such a manner that the rails thereof shall not be higher than the level of the adjacent street-pavements."

The tenth section is in these words: "And provided further that the city of Louisville shall not be liable to said railway company for any damage said company may incur from the breakage of any sewer or water-pipe, or from any delay in the transportation of passengers that may be incurred by the laying of sewers, water or gas-pipes, or the necessary repairing of the same, or from any delay or damage that may be caused by fire or otherwise."

Since the consummation of this agreement the railway company has constructed over twenty-four miles of track, at a cost of near four hundred thousand dollars. In the construction of this track two patterns of rail have been used, one known as the "crescent" and the other as the "tram" rail.

In 1864, and during the time the greater portion of these railways were being constructed, the streets of Louisville were either bowldered or macadamized. Since 1867 the city has inaugurated a system of street improvements by which the Nicolson pavement is being gradually substituted for those

in use prior to that time. Out of the reconstruction of a portion of Jefferson Street with the Nicolson pavement grows one of the matters involved in this litigation. The city gave notice to the company that it must remove its tracks upon that street for a distance of about twelve hundred and eighty yards, and put down, as the construction of the Nicolson pavement progressed, new tracks of tram-rail; otherwise the city would remove such track and construct the pavement without itself providing the tram or other rail, or leaving a space in the pavement for any character of track.

Inasmuch as the track thus ordered to be taken up and reconstructed had originally been put down with the crescent rail with the consent and implied approval of the city, the company denied its right to take the proposed action. But to prevent interruption of the street improvement, and to save the rights of the appellant, an agreed case was made up and submitted to the chancellor of the Louisville Chancery Court for adjudication. The railway company in the mean time proceeded to comply with the requirements of the city council, upon the express understanding that such compliance should not prejudice its right, if any it has, to be reimbursed for any expense incurred in providing the tram-rail as a substitute for that ordered to be discarded.

It was agreed that the crescent pattern of rail in use on Jefferson Street was in reasonably good condition, "and also that the tram is the better rail for streets on which the Nicolson pavement is used." It was further agreed that all the streets of Louisville were bowldered or macadamized when the railroads of the company were constructed, and that the requisition of the city as to the tram-rails on Jefferson Street had already cost the appellant not less than one hundred dollars; and that the substitution of the tram for the crescent-rail required new timbers and floors, and new iron spikes. The questions submitted to the chancellor for determination were:

"*First*, whether the city of Louisville under these circumstances can require the said railway company to take up its track of crescent-rail on Jefferson Street, between First Street and Ninth Street; *second*, if the question is determined in favor of the city, is the city bound under these circumstances to reimburse said railway company the amount it may necessarily expend in taking up its present track on said route and putting down a tram-rail; *third*, if it be decided that the railway company is entitled to reimbursement to any extent, to what extent is it so entitled?"

The chancellor decided the first two propositions in favor of the city, and we are now called upon to review this judgment. In determining the legal effect of contracts made with municipal corporations it must be borne in mind that they have no power to limit their legislative discretion by covenant. They may contract as individuals, but their legislative enactments must of necessity have the same effect upon their individual contracts as upon those of other persons, artificial or natural, or of the general public. The company derives its right of way over certain of the streets and highways of the city of Louisville by contract with the city government. The city through its municipal officers holds to some extent the prerogative of government. The General Assembly of the commonwealth has delegated to it for the common benefit the power to regulate and control these streets and highways. This power the city can not refuse to exercise when public necessity or convenience demands that it shall be done, nor can it be allowed to excuse its failure in this particular upon the ground that it has by contract deprived itself of the right to act. (Presbyterian Church v. City of New York, 5 Cowen, 532; Vanderbilt v. Adams, 7 Cowen, 349; Stuyvesant v. New York, *ibid.* 585; Cooley's Constitutional Limitations, 196.)

Under the general legislative power of the municipal gov-

ernment to control and regulate the use of the streets of the city, it could not grant to any person or corporation the right to lay down a railway in a street. Such a grant could not be regarded as a legislative act, but rather as a surrender during the term of the grant of one of the powers of the corporation. (Milhau v. Sharp, 17 Barbour, 435.) The right of the general council to contract with the railway company grows out of the special acts of the legislature heretofore quoted.

The act of March 2, 1863, which by the terms of the charter of the railway company is made to control and limit the power of the general council to contract with that corporation, requires such council to reserve the right to regulate and control such railroads as it may authorize to be laid down and operated in any of the streets or highways of the city. This limitation is for the benefit and protection of the public, and must be so construed as to accomplish the evident purpose of the legislature.

The law reserves to the council the right to regulate the manner of the construction and reconstruction of the street-railways. The city government, in the exercise of its legislative powers, must determine as to the necessity for or the propriety of the improvement of the streets, and also as to the manner of such improvement. The contract with the railway company does not impair its right to put down the Nicolson pavement on the streets through which the right of way has been granted to that corporation. When it exercises this right it must so regulate the reconstruction of the street-railways as to subserve as far as possible the convenience and necessities of the public.

The company can not be deprived of the right of way except in the manner provided by the organic law for taking private property for public use; but the municipal government may, in the exercise of a sound discretion, make reasonable and proper regulations, prescribing the manner in which this right

of way shall be enjoyed. The railway company holds its franchises and property by no higher or more sacred title than other persons. The city government has the general power to so regulate the use and enjoyment of private property in the city as to prevent its proving pernicious to the citizens generally. It may, when the use to which the owner devotes his property becomes a nuisance, compel him to cease so to use it, and punish him for refusing to obey its ordinances or regulations concerning such use. (Ashbrook v. Commonwealth, 1 Bush, 139.) These powers to interfere with the citizen in the use and enjoyment of his property are indispensable to government. Without them the public would be at the mercy of every man who chose to disregard the safety or comfort of his neighbors. If it be a fundamental principle that these powers are impliedly reserved by the government in all its grants of property to private individuals, its right to exercise such power can not be doubted where, as in this case, the reservation is express. We will not assume that the city government, in the exercise of the legislative power to regulate the reconstruction of the railway on Jefferson Street, acted capriciously or without sufficient reasons. The presumption of law is that it did not, and the agreed facts before us show that the tram-rail which it required to be put down is the better rail for streets on which the Nicolson pavement is used. It follows therefore that the first proposition was correctly decided in favor of the city.

And as the general council could not by contract deprive itself of the power to regulate the reconstruction of railways made necessary by changes in the character of pavements used upon the streets of the city, neither could it embarrass or clog its right to exercise such power by undertaking, either expressly or by implication, to pay the expenses necessarily incurred by the company in complying with the reasonable and proper regulations made by the city upon this subject. This conclusion is identical with that of the chancellor upon

the second proposition, and upon this branch of the case his judgment is affirmed.

The remaining question in controversy is as to the liability of the city to pay the cost of taking up and replacing the track of the company on Second Street, between Walnut and Broadway. This was rendered necessary by the construction of a sewer under said street between those points. The company refused, after notice, to take up its track unless the city would bear the costs of taking up such track as well as of replacing it. The city in consequence of this refusal removed such portion of the track as was necessary, and failed and refused to replace it.

For reasons heretofore given we are of opinion that the city did not and could not surrender its right to construct sewers in such portions of its limits as might require them, and that the railway company holds its right of way subject to this power.

The judgment of the chancellor upon this point must therefore be affirmed.