JUDGE PRYOR
delivered the opinion of the court.
The Covington Street-railway Company was incorporated by an act of the legislature on the 9th of February, in the year 1864, for the purpose of constructing and using railways along the streets of Covington and in the suburbs of that city. The act of incorporation provides “that the company may *128 construct lines of railway along such streets as it may consider beneficial to the interest of the company and to which the city council .of the city may consent, authority for which is hereby given to said council to make an agreement therefor; and along such turnpike roads as may be agreed with the turnpike companies. It may also construct tracks across the Covington and Cincinnati bridge and the Newport and Covington bridge, by the consent and agreement of said companies.”
The city council of Covington passed an ordinance prescribing the terms and conditions by which passenger railway companies might run their street-railroads within the city limits. The second section of that ordinance provides “that no company shall lay down a track through any of the streets of the city without first obtaining the consent of the city council, designating the company and the street over which the line of the railway shall pass.” The tenth section of the ordinance provides that “the franchise for street-railroads, as provided for in said ordinance, be granted to any responsible company who will pay into the city treasury the largest bonus for the same,” etc. Under this ordinance the appellant (the Covington Street-railway Company) entered into a contract with the city by which it was permitted to lay down its tracks upon certain streets by giving bond containing various stipulations for a compliance on its part with the city ordinance on the subject of street-railways, and among other things agreeing to pay the city the sum of two hundred and fifty dollars annually for the period of twenty-five years as a bonus for the privilege granted it by the city. Some payments were made by the appellant in discharge of its obligation; but failing or refusing to pay several of these annual installments after they matured, the city of Covington instituted the present action for the recovery thereof.
The petition alleges the execution of the bond, the stipulations therein contained, and the breach of the covenant on the *129 part of the appellant in failing to pay the money. The city ordinance with reference to the execution of the bond by the company is also made part of the pleading.
The court below held, upon a demurrer to the petition by the appellant, that the facts therein contained constituted a cause of action, and the appellant electing to stand by the demurrer, a judgment was rendered in favor of the appellee (the city of Covington) for the amount claimed in the petition ; and from this judgment the appeal is prosecuted.
The essential and only question presented by the record is as to the right of the city of Covington to exact as a bonus from the appellant the sum of two hundred and fifty dollars per annum for the privilege of using its streets for railway purposes. Whether or not the city charter, regardless of the act by which the street-railway company was organized, had the power to make this exaction is unnecessary to determine, and it may be conceded, so far as the question involved in the present controversy is concerned, that all the authority the city had in reference to this matter is derived from the act incorporating the street-railway company on the 9th of February, 1864.
This court, in the case of the Louisville Railway Company against the city of Louisville, adjudged that the city had no right to authorize the construction of street-railways without some legislative enactment vesting the municipal authorities with such power. The exercise of the power to exact a bonus from the company by the city for the privilege granted is claimed to be derived from the act incorporating the company, by which it is permitted to construct its lines of railway over the streets, “and to which the city council may consent, authority for which is hereby given to said council to make an agreement therefor.”
This clause of the enactment has a more enlarged meaning than the counsel for appellant is disposed to give it. If the *130 legislature intended that the consent of the city authorities as to the running of these lines of railway on their streets was all the voice they had in the construction of the contemplated railways, then there would -have been no necessity for any agreement, or for any authority in the act itself vesting the city with the power to make an agreement with reference to the location and running of street-railroads. The company is not only required to obtain the consent of the municipal authorities, but the latter are authorized by the act itself to make an agreement requiring a consideration for this consent. If the city is merely to consent to the action of the railway company in the location of its lines or in the designation of the streets, this consent could be made to appear upon the records of the proceedings of the city council, and any agreement could not only be dispensed with, but would be wholly unnecessary. While this railway company was incorporated for public use, and while this use may not be inconsistent with the purposes for which these streets were originally dedicated, still this public use is also the means of advancing individual interests, and is an appropriation of the right of way upon a public street for the benefit of the company as well as the public. The streets of a city are opened and paid for by the public for the use of the public. The citizens have the right to the free and undisturbed use of these streets for the purpose of passing over them; and when this right is restricted by reason of state or city legislation in the interest of companies, although it may be for the public good, we see no reason why the law-making power should not require some compensation for the surrender, even if it be to a limited extent, of the public use. This was doubtless the intention of the legislature in the passage of the law, and the construction given it by the court below is sustained by the spirit, meaning, and letter of the act itself.
The judgment of the court below is affirmed.