# Winter *v.* The City Council of Montgomery.

*Bill in Equity against Municipal Corporation, for Injunction in matter of Side-walks.*

1. *Hearing on bill and answer, in injunction case.*—Under bill for an injunction, if an answer on oath is waived, and the cause is submitted for final decree on bill and unsworn answer, the complainant is not entitled to a decree, unless, on the admitted averments of the bill, the injunction ought to be made perpetual.

2. *Side-walks and pavements in city; power of corporate authorities over.* When the charter of a city gives it power and authority to require the owners of property to keep the adjacent side-walks paved and in good repair, and, on their default, to have the work done by the city, and assessed against the property; while the power is not to be exercised capriciously, oppressively, or in an unreasonable manner, much must be left to the discretion and judgment of the corporate authorities, in prescribing the time when repairs are necessary, the manner in which they shall be made, &c., and individual interests must yield to the necessities and convenience of the public.

3. *Excavations and erections on side-walks, by permission of corporate authorities.*—Permission to the owner of a building on the corner of one of the principal business streets in the city, to erect a veranda extending across the side-walk, does not authorize him to use a part of the veranda as a water-closet for the convenience of tenants occupying the upper stories of the building; and permission to make excavations under the side-walks, for the purpose of utilizing the basement, giving entrances to it from the streets, and affording light and ventilation, is a mere license, not having the elements of a contract, but revocable at the will of a subsequent municipal council, in the exercise of its power over the side-walks and pavements of the city.

4. *Constitutional provisions as to property taken, injured or destroyed by municipal corporations.*—The constitutional provision which requires corporations, invested with the right of taking private property for public use, to make prepayment of compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements (Art. xiv, § 7), has no application where the municipal authorities of a city, in the exercise of their undoubted powers over the side-walks and pavements, tear down erections, remove obstructions, or fill up excavations in or under the side-walks, which were built or made under a revocable license granted by a former council.

APPEAL from the City Court of Montgomery, in equity. Heard before the Hon. THOS. M. ARRINGTON.

The bill in this case was filed on the 2d September, 1886, by Joseph S. Winter, against the corporate authorities of the city of Montgomery; and sought to restrain the defendants, their officers and agents, from filling in the side-walk around a brick building in the city, known as the "Winter Building," or laying a Schillinger pavement thereon, or tearing down a room on the second floor of the veranda around the building. The veranda had been erected by the complainant "in the spring of 1855," under authority granted by the city council at ˙that time; and the room on the second floor, extending across the side-walk, had been used as a water-closet by the tenants of the upper stories of the building, until it was torn down by the defendants' agents, a short time before the bill was filed, having been declared a nuisance. The building was at the intersection of Court street and Dexter avenue. The pavement on each side had been taken up by the complainant, in July, 1870, under permission granted by the city council, the side-walk excavated its entire width, and a pavement of wooden blocks laid, which was supported by girders and timbers below; this being done for the purpose of utilizing the basement, affording light and ventilation, and giving entrances to it by stair-ways from the side-walks above. In June, 1886, the wooden pavement having been declared out of repair and dangerous, the owner was notified and required to make the necessary repairs and improvements within a specified time; and having failed to do so, the defendants' agents proceeded to tear up the old pavement, and fill in the excavation, preparatory to laying down a Schillinger pavement, as specified in the city ordinance.

A temporary injunction was granted on filing the bill. The defendants filed an answer, but not under oath, an answer under oath having been waived; and in their answer they incorporated a demurrer, specifically assigning several causes of demurrer. They also made a motion to dismiss the bill for want of equity, and on the denials of the answer. The cause being submitted "on bill and answer, and on demurrer," a decree was rendered sustaining the demurrer, dissolving the injunction, and dismissing the bill; and this decree is now assigned as error by the complainant.

THOS. H. WATTS, for the appellant.

J. M. FALKNER, *contra.*

CLOPTON, J.—By the charter of the city of Montgomery power is conferred on the City Council, "to alter old, make and ascertain new streets and alleys; to clean and keep in repair the streets and alleys; to require the owners of property to keep the side-walks in front of the same in good order, and to pave the same in such manner and at such time as shall be ordered by the City Council; to repair, keep in good order, and pave the side-walks in front of such property, the owners of which shall, after being so ordered, fail or refuse to repair, keep in good order or pave said side-walks, for five days after notice, and to tax the same against such property, which tax shall have the lien of, and be enforced and collected, as other taxes."—Acts 1878–9, 374. Under this legislative authority an ordinance was passed, in August, 1883, providing that all pavements laid in future on Commerce street, Court square and Market street, as far south-east as Lee street, shall be laid in stone of uniform size as far as practicable, not less than two by three feet, with upper surface chisel-dressed to a plane, and all edges chisel-dressed meeting the upper surface in straight lines, or in artificial stone or concrete; and providing further, that when any pavement on the streets mentioned, laid in brick or other material, shall get out of repair, it shall be taken up, and re-laid in the manner provided in the ordinance.

The City Council, having ascertained that the side-walks in front of the property situated at the south-east intersection of Court street and Dexter avenue, formerly Market street, known as the "Winter Building," were out of repair and dangerous, directed · in June, 1886, that the owners be notified of the fact, and that they must be repaired and put in good order within ten days after the service of the notice, by laying the same in stone, artificial stone, or concrete, and made safe by proper supports under the surface, and above the excavations under the sidewalks; or, on default, that the city would lay the side-walks with "the Schillinger pavement," and either fill up the excavations, or put in proper supports, as advised; and that the expense would be assessed against the property, and collected as other taxes. Default having been made by the owners, the City Council passed an ordinance June 24, 1886, which, after reciting the above facts, the service of the notice, the default, and the report of the engineer as to the cheapest and most durable manner of re-

pairing, ordered the Street Committee to proceed at once to have the excavations filled with earth, and the side-walks laid with Schillinger pavement, in accordance with the general ordinance above mentioned. The Street Committee proceeded to do so, and were engaged in the work, when the injunction in this case was sued out, restraining further proceedings.

The cause was submitted on bill and answer, for final decree. The verification of the answer was waived. Counsel invoke many principles only applicable when motion is made to dissolve a temporary injunction before final hearing. When a cause is submitted for final decree on bill and unsworn answer, the complainant is not entitled to relief, unless so entitled on the allegations of the bill admitted by the answer. Hence, consideration will be directed to the inquiry, whether the complainant has the right to have the injunction made permanent, the sole purpose of the bill, on the admitted averments.

The substantial grievances complained of are, that the City Council ordered, and the Street Committee proceeded under the order, without notice to the owner, to tear down a room in the south-west end of the veranda around the building, and were proceeding to fill the excavations under the side-walks, thus closing the side-lights and ventilation of the basement story, rendering it valueless for business purposes. Complainant does not seriously controvert the control of the City Council over the side-walks, nor the right and power to require the owner of property to keep in good order the side-walks in front thereof, and pave the same in such manner and at such time as shall be ordered, and to repair and pave them on refusal or failure of the owner after notice, except as to the side-walks in question. If it were controverted, the charter grant of authority is express and ample. Of course, its exercise must be reasonable, and not oppressive. The bill does not show that the provisions and requirements of the ordinance are of themselves unreasonable and oppressive, but only relatively so, respecting the particular case and particular circumstances, which is denied by the answer. The value of the Schillinger pavement is assailed; but the kind of pavement is left to the discretion and judgment of the City Council; and, besides, the averments are denied.

As we understand and collect from the bill, which is voluminous, a special equity is claimed and founded on the allegations, that the veranda was erected in 1855 under a contract

and understanding with the City Council, and that the basement was prepared and the excavations under the side-walks made, in 1870, under another contract, both at great expense; and that the basement has been ever since in use by the owner, without let or objection, and is of great rental value. Two exhibits are attached to the bill, and referred to, as containing and showing the alleged contracts. The answer denies that there were any contracts; but admits that the exhibits correctly represent the proceedings of the City Council in reference to the veranda and the excavations. The first exhibit consists of the report of the committee to whom the petition of complainant was referred, which was adopted, recommending that permission be granted to erect a veranda around the building, on specified conditions, not now important. The second exhibit authorizes the complainant to proceed with the improvements on the corner of Market and Court streets, being the property in question, according to a plan exhibited, which contemplated the excavation of the side-walks, and the formation of the basement for business purposes, with entrances thereto, on condition that the side-walks be replaced with good and substantial pavement, in accordance with the plan annexed.

An analysis of the exhibits shows that neither of them possesses any of the elements or qualities of a contract; and no extrinsic facts are averred, which impart such force and operation. The veranda and excavations were solely for the use and benefit of the owner of the property, and of advantage to him, without consideration of any benefit to the public. We need not, therefore, inquire into the power of the City Council to make a contract, which shall operate to disable the corporation to exercise the authority to keep the side-walks in safe and good condition, to regulate their repair, and to make necessary or proper changes in the character of the pavements to be used. Each exhibit merely shows permissive authority—a license, which is revocable at will. The general chartered powers to repair and keep in good condition the sidewalks, and to pave or require them to be paved, are indispensable to the safety and convenience of the public; and their retention unabridged is essential to the performance of the duty, devolved by law on the corporation when the authority is conferred and the means furnished. A license by legislative act, legalizing obstructions in the streets of a municipality, *which otherwise* would be nuisances, is dependent on the legislative will, and may be withdrawn.

38

*Reading v. Commonwealth*, 11 Penn. St. 196. A mere license does not operate to divest the City Council of these powers legislative in their nature and character, nor to abridge their exercise. It is the duty of the city government to exercise the authority to control, regulate and repair the side-walks, whenever the public safety or convenience requires; and its failure will not be excused because of a previously granted license, or an attempted self-deprivation of the powers by contract. These general chartered powers, and the right to exercise them at any time, and in any manner, in *the reasonable* discretion of the City Council, are impliedly reserved in every grant of property to private individuals, when not expressed otherwise, and in every license to use or obstruct the streets.—*Louisville City Railway Co. v. Louisville*, 8 Bush, 415; *Goszler v. Georgetown*, 6 Wheat. 597.

We will not controvert, that there may be a class of cases of peculiar circumstances and hardships, which call for the assertion in favor of the individual of an equitable estoppel against the public; but this case does not fall within the class. The manner and time of repairing and paving the side-walks are to be determined and ordered by the City Council, in exercise of a sound discretion in view of the public convenience and demands. The permission to erect the veranda does not confer authority to convert the south-west end into a room, and place therein water-closets immediately over a side-walk, in a business and frequented part of the city. Notice was given to the owner of the want of repair, and the dangerous condition of the side-walks; and that they must be repaired and paved within ten days after the notice, in accordance with the previously adopted general ordinance, or the city would repair and pave them. Opportunity was afforded the owner to repair and pave, and to preserve the side-lights and ventilation of the basement, if it could be done consistently with the public requirements. The opportunity was neglected, and the city authorities proceeded to do the work in the manner recommended by the engineer, and approved by the City Council. All the allegations of the bill, charging that the corporate authorities acted capriciously, from ill motive, and in an unreasonable and oppressive manner, are denied in the answer; and in view of the presumption of law, we cannot assume, in the absence of proof, that they have so acted. No equity arises on the permissively long and continued use of the improvements. They were made by permission, with a knowledge of the neces-

sity of first obtaining such permission, and of the power of the City Council, and of the implied reservation of the right to withdraw the license for their continuance. No hostile, independent right has been asserted, brought home to the City Council. It may be that hardship will result to the owner; but, in such case, individual interests must yield to the necessities and convenience of the public.

The validity and constitutionality of the ordinance are assailed, on the ground that it does not provide for notice to the owner, of the assessment of the expenses against the adjacent property. The bill does not show that the City Council has made any assessment, or is undertaking to collect the expenses. The general ordinance does not provide for the assessment of the expenses against the adjacent property, and the ordinance specially referring to the side-walks in question, simply provides, that notice shall be given to the owner that the expenses will be assessed against the property, and collected as other taxes are. The necessity of notice, and whether the side-walks are out of repair so as to bring them within the provision of the general ordinance, are questions which may arise when it is attempted to charge the expenses against the property of the individual. The provision of the constitution, that municipal corporations shall make previous compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements, has no application. No property was taken, injured or destroyed, which was not erected by permission of the City Council, and subject to the right of withdrawal.—*Louisville City Railway Co. v. Louisville, supra.*

Affirmed.