CITY OF COVINGTON v. SOUTH COVINGTON & CINCINNATI STREET RAILWAY COMPANY.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF KENTUCKY.

No. 225.  Argued March 19, 20, 1918.—Decided April 15, 1918.

A grant of "all the right and authority" that a city "has the capacity to grant" to construct, hold and operate a street railroad on designated streets, without a hint of limitation as to time, is a grant in perpetuity if the city has authority to grant perpetually.

An ordinance entitled "an ordinance prescribing the terms and conditions of street passenger railroads within the City of Covington," providing for proposals and a contract to be made with the best bidder respecting specific routes, and declaring that "all contracts made under the provisions of this ordinance shall be for the term

and period of twenty-five years," *held* not to be addressed to the scope of future ordinances, and not to limit the term, otherwise perpetual, of a franchise for other routes granted by a later ordinance.

One street railroad company held a perpetual ordinance franchise, and another a limited one with but eight years to run with the right, however, at expiration to secure a new franchise or compensation for its property. An ordinance, entitled as granting the right of way to the first company over the streets held by the second, authorized the first to contract for the second's right and to "occupy and use" such streets "subject to the conditions, limitations and restrictions" contained in the ordinances regulating the first company's rights in the streets it already occupied, but, as a condition, obliged the first company to give up part of its line which would be but imperfectly supplied by the new rights even if they were perpetual. *Held*, that the ordinance granted a perpetual franchise to the first company, and was not merely a consent that it acquire the right of the second.

Where not otherwise construed by the state court, legislation vesting the streets in a city, and giving its authorities exclusive control over them and its council exclusive power to establish and regulate all sidewalks, streets, alleys, lanes, spaces and commons of the city, is to be taken as empowering the city to grant street railroad franchises in perpetuity. *Owensboro* v. *Cumberland Telephone & Telegraph Co.*, 230 U. S. 58.

A street railroad is one of the ordinary incidents of a city and with respect to the municipal granting power stands on a different footing from steam railroads habitually run over separate rights of way.

Affirmed.

THE case is stated in the opinion.

*Mr. A. E. Stricklett* for appellant.

*Mr. Alfred C. Cassatt*, with whom *Mr. Richard P. Ernst* and *Mr. Frank W. Cottle* were on the briefs, for appellee.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill in equity brought by the appellee to restrain the City of Covington from carrying out an ordi-

nance of July 14, 1913, that provides for the grant of a twenty-year franchise for a street railway over certain streets to the best bidder. The plaintiff claims a right by grant and contract over the same streets, which will be interfered with, and sets up Article I, § 10, and the Fourteenth Amendment of the Constitution. The defendant says that the plaintiff's grant has expired, and that if it purports to be perpetual it was beyond the power of the city. These are the two propositions argued. The District Court granted the injunction as prayed and the city appealed.

We will consider first the scope of the ordinances and contract under which the plaintiff makes its claim. On January 21, 1870, Edward F. Abbott, S. J. Redgate and their associates were incorporated, with perpetual succession, as the Covington and Cincinnati Street Railway Company, with power to construct railways in the City of Covington along such streets as the council might grant the right of way to, and along such roads out of the city as the companies owning the roads might cede the right to use. The company was authorized to purchase and hold such routes and railway tracks as might be deemed necessary for its use, and to connect with and use the tracks of other railways in the vicinity upon equitable terms. Just before their incorporation, on December 13, 1869, an ordinance was passed by the city granting, according to the terms of a contract executed on December 23, 1869, to Abbott and Redgate, "their associates, successors and assigns," "all the right and authority that [the city had] the capacity to grant, to construct, hold and operate a street railroad upon and along" the streets named. The only provision for a termination of the rights conveyed was in case of a failure of the grantees to keep their covenants. On December 28, 1874, an ordinance was passed extending the time for completing the work under the Abbott contract,

renewing the terms of the same but somewhat changing
the route, and on January 28, 1875, another authorized
an extension to a suspension bridge across the Ohio. On
May 1, 1875, Abbott and his associates conveyed all
their rights under the foregoing ordinances and contract
to the corporation that they had formed, and the title of
the corporation was recognized by an ordinance of
June 24, 1875. On January 25, 1876, Abbott and others
were incorporated with perpetual succession as The
South Covington and Cincinnati Street Railway Com-
pany, the appellee, with substantially the same powers
that were granted to the Covington and Cincinnati Com-
pany, and on December 20, 1876, the last-named corpo-
ration conveyed its rights to the appellee. The latter has
whatever rights were acquired by Abbott, as was recog-
nized by an ordinance of October 13, 1881.

As there is no hint at any limitation of time in the
grant to Abbott, and on the other hand the city grants
all the right and authority that it has the capacity to
grant, there can be no question that the words taken by
themselves purport a grant in perpetuity more strongly
than those held to have that effect in *Owensboro* v. *Cum-
berland Telephone & Telegraph Co.*, 230 U. S. 58. The
fact chiefly relied upon to narrow their operation is found
in the terms of "an ordinance prescribing the terms and
conditions of street passenger railroads within the City
of Covington" passed on December 15, 1864, before the
dealings with Abbott. By § 13 "all contracts made under
the provisions of this ordinance shall be for the term and
period of twenty-five years." It is contended that this
by implication governs later transactions. But there is
little ground for even an argument upon the point. The
ordinance is providing for proposals and a contract with
the best bidder, concerning routes contemplated by a
rival of the Covington and Cincinnati, the Covington
Street Railway Company incorporated on February 9,

1864 (afterwards bought up by the appellee). The contracts referred to in § 13 are primarily at least contracts of those who should acquire the franchises offered, such as in fact were made. In no sense is the Abbott contract a contract under that ordinance. It was a contract under the ordinance of 1869, which established its substance and even its form. The ordinance of 1864 did not address itself to the construction or scope of future ordinances, but only of certain contracts of which Abbott's was not one. We regard the matter as too plain to be pursued into greater detail. This part of our decision covers all the grants to Abbott including the right to lay tracks to the suspension bridge.

There were extensions of the plaintiff's rights by acts of the legislature of March 13, and April 5, 1878, in general terms that there seems to be no reason for supposing more limited in time than the original grant. See § 3. The only part of this branch of the case needing further discussion concerns the rights acquired by the plaintiff through the purchase of its rival's, the Covington Street Railway's, lines. This company, under the ordinance of 1864 that we have mentioned got a franchise limited to twenty-five years, but with provisions that there should be a new bid after that time and that the successful bidder, if other than the Covington Street Railway Company, should purchase its property upon a valuation. It did not lose the value of that property by the ending of its right of use. On June 8, 1882, the plaintiff, already having a general authority by its charter, was authorized by "an ordinance granting the right of way over certain streets . . . to" the plaintiff, to contract with the Covington Street Railway Company for the right of way held by the latter and to occupy and use the streets specified in the contract of that road with the city, "subject to the conditions, limitations and restrictions contained in the ordinances regulating its [the plaintiff's] right to

the streets now occupied by the said South Covington and Cincinnati Street Railway Company." This grant was on condition that the plaintiff should remove the tracks by which it connected with the suspension bridge under the ordinance of January 28, 1875, and give up its rights to the same, which as we have said were rights in fee. It got other access to the bridge over the Covington Street Railway line, but we agree with the district judge that it is not to be supposed that it would give up its perpetual right for a franchise having eight years to run over a less convenient route, so far as this part of its purchase was concerned. We agree also that the language of the ordinance conveys more than a license to purchase what the vendor had. The title and the operative words import a grant and the reference to the ordinances regulating the plaintiff's right in the streets adopts as the measure these, not the contract with the selling road. The ordinance was followed by the contemplated contract in July, 1882. Some further grants need no special mention. We are of opinion that the plaintiff's right in this part of its system also is a right in fee.

The question of the power of the city to grant a perpetual franchise needs but few words. By statute the streets were "vested in the city" and the authorities of the city were given "exclusive control over the same" and in another section the council was given "exclusive power to establish and regulate . . . all sidewalks, streets, alleys, lanes, spaces and commons of the city." Acts 1849–1850, c. 237, §§ 2, 19, p. 239. No decision of the state court is brought to our attention that calls for any hesitation in following the authority of *Owensboro* v. *Cumberland Telephone & Telegraph Co.,* 230 U. S. 58, and pronouncing the authority complete. *Wolfe* v. *Covington & Lexington Railroad,* 15 B. Monr. 404. A street railroad is one of the ordinary incidents of a city

street and stands on a different footing from the steam roads habitually run over separate rights of way.   See also Act of March 13, 1878, c. 423, and Act of April 5, 1878, c. 813, §§ 1, 3.

*Decree affirmed.*

MR. JUSTICE CLARKE, dissenting.

I have so recently stated my reasons for not concurring in opinions which seemed to me, by inference and construction, to raise limited, into perpetual, grants of rights in city streets, that I shall not repeat them here (*Owensboro* v. *Owensboro Water Works Co.*, 243 U. S. 166, 174; *Northern Ohio Traction & Light Co.* v. *Ohio*, 245 U. S. 574), but shall confine myself to a brief statement of the facts and conclusions of law which lead me to dissent from the court's opinion in this case.

The opinion of the court begins with the grant to Abbott, et al., in December, 1869, but in my judgment that grant cannot be correctly interpreted without beginning five years earlier, in 1864, with an ordinance passed by the city, which is general in its terms and is described in the record of council as "an ordinance defining the obligations of any company or individual to whom privilege may be granted to use the streets of the city for street passenger railroad purposes." It is entitled, "An ordinance prescribing the terms and conditions of street passenger railroads within the City of Covington." This ordinance contained these provisions: "This ordinance shall continue and be in force from and after its passage. All contracts under the provisions of this ordinance shall be for the term and period of twenty-five years." And so far as the record shows it has never been repealed.

Pursuant to the terms of this general ordinance, a contract was entered into as of March 9, 1865, with the Covington Street Railway Company, giving it the right to

operate a street railway on designated streets, again "for a period of twenty-five years from its date."

More than four years later, on May 13, 1869, Abbott and others made an application to the council for a franchise and the company holding the prior grant, which was then operating a railway, protested against the making of a grant to Abbott, and warned the city that it claimed the right to operate on all its streets and that another grant could not lawfully be made.

But at the meeting at which this protest was filed, without any special authority from the legislature, this grant was made to Abbott. It is from the language of this grant that the court derives a perpetual franchise, and it reads:

"Be it ordained by the City Council of Covington that all the authority and right that the City of Covington has the capacity to, be and the same is hereby granted to E. F. Abbott [*et al.*] . . . . to construct, hold and operate a street railroad," upon designated streets.

I cannot bring myself to think that this is the language men would use who were intending to grant perpetual rights in city streets, but rather it seems to be the cautious describing of what the councilmen thought a doubtful right under a doubtful remnant of authority, remaining after the grant to the other company which was threatening litigation if this further grant were made, and that they thought it subject to the limitation of twenty-five years in the general ordinance of 1864. And be it noted that this grant, made without special authority from the legislature, is dated December 13, 1869; that the Covington & Cincinnati Street Railway Company, the predecessor of the appellee, was not chartered for more than a year after the date of this grant to Abbott, from which all the rights of the appellee are claimed to flow; and that it did not acquire the grant

until 1875 in which year the first construction work was done under it.

Some twenty years after the grant to Abbott the City of Covington granted, this time to the Cincinnati, Covington & Rosedale Company, a franchise which was expressly limited to fifty years and which, recognizing that the general ordinance of December 15, 1864, was still effective, required that the grantee should conform to all the requirements of that ordinance "except in so far as the same has been repealed."

In the street railroad case of *Louisville City Ry. Co.* v. *City of Louisville*, 8 Bush, 415, the Court of Appeals of Kentucky, construing the charter of the City of Louisville, granting jurisdiction over streets, in scope, not less than that granted by the Covington charter, declared: "Under the general legislative power of the municipal government to control and regulate the use of the streets of the city, it could not grant to any person or corporation the right to lay down a railway in a street. . . . The right of the general council to contract with the railway company *grows out of the special acts of the legislature* heretofore quoted."

Whether this statement was necessary to the decision of the case then under consideration or not, in the following year it was paraphrased and adopted in a *Covington Street Railway Co.* case [*Covington Street Ry. Co.* v. *Covington*] 9 Bush, 127, and, almost twenty years after that, it was again approved in a *Covington* case, [*Bateman* v. *Covington*] 90 Kentucky, 390.

Thus, during the entire period covered by the grants here-involved, it was the law of the State, as its highest court understood and announced it, that the City of Covington did not have, under its charter, power to make a street railway grant, *without special authority so to do from the legislature.*

That this was also the opinion of the legislature of the

State and of that part of the bar of the State concerned
with the grants here involved is conclusively shown by
the fact that in the charter of every one of the three street
railway companies concerned herein there is *a special
grant of power to the City of Covington* to make the con-
templated contract for the use of its streets for street rail-
way purposes.

This obscurely worded grant, thus made to Abbott
without special legislative authority, is not helped out by
subsequent recognition by the city, for we find the parties,
almost from the beginning of its term, dealing with each
other constantly at arm's length, the city claiming that the
grant was, at most, limited to twenty-five years, and the
Railway Company claiming it to be perpetual.

For instance, as early as 1887, when the right to use
electric power was granted, a typical provision was in-
serted in the ordinance, accepted in writing by the com-
pany, "that nothing in this ordinance shall be construed
to, nor shall it give to, said railway any further or longer
time than it now has to operate its lines."

Again, in 1892, for a reduction of fare and other con-
siderations the city agrees "for the period of twenty years
after the date of the acceptance of this ordinance" not
to offer for sale any of the rights or franchises of the ap-
pellee in the said streets; and it was not until after the
expiration of this period that the proposition to grant a
new franchise was made, which the decision of the court
permanently enjoins.

This is sufficient of detail to indicate why I am of opin-
ion that the meager and equivocal grant of 1869 should
not be regarded as helped out by the subsequent dealings
of the assignees of it with the city.

Under the circumstances thus presented, with limited
franchises granted before and after this grant to individ-
uals, but never one unlimited in terms, with the city
contending always that this franchise was for twenty-

five years only, and with the courts, legislature and bar of the State united in thinking that there was no power in the municipality to make even a limited street railroad grant without special legislative warrant, I cannot bring myself to consent to construe, as the court does, an obscurely worded clause of a single sentence, found in a grant to individuals, of the right to construct an insignificant horse railroad, which the son of the grantee in an affidavit alleges required an expenditure of only $48,000, so as to impose upon the municipality "the unspeakable burden" of a perpetual franchise to operate street railroads in its streets.

Fully realizing the futility, for the present, of dissenting from what seems to me to be an unfortunate extension of the doctrine of the *Owensboro Case*, 230 U. S. 58, I deem it my duty to record my dissent, with the hope for a return to the sound, but now seemingly neglected, doctrine of *Blair* v. *Chicago*, 201 U. S. 400, 463, declaring that a corporation which would successfully assert a private right in a public street must come prepared to show that it has been conferred "*in plain terms,*" "*in express terms*" and that any ambiguity in the terms of the grant must be resolved in favor of the public and against the corporation "*which can claim nothing which is not clearly given.*" The reason given by the court for this rule is, that "grants of this character are usually prepared by those interested in them," and that "it serves to defeat any purpose concealed by the skillful use of terms, to accomplish something not apparent on the face of the act." This is declared to be "sound doctrine which should be vigilantly observed and enforced."

Believing that the application of this wise rule to the decree before us must result in its reversal, I dissent from the opinion of the court.

Mr. Justice Brandeis concurs in this dissent.