P. E. HALL *et al.* v. THE CITY OF CEDAR RAPIDS *et al.,* Appellants.

Constitutional Law: MUNICIPAL DEBT LIMIT: *Evasion.* Where a city is indebted to the constitutional limit, it may not evade the provision by acquiring a water works plant in consideration of hydrant rentals.

Ordinances: WATER RATES: *Reasonableness.* Code, section 725, provides that cities may require every water corporation, subject to reasonable regulations, to supply the city with water, and fix the water rate. Section 952 makes such section applicable to cities operating under a special charter. *Held,* that an ordinance, whereby a city is required to pay $95 per hydrant for 23 years is void, both as to time and because it appears that $50 would be reasonable charge, and that the maximum charge at the time of the adoption of the ordinance was $65 per hydrant for a much smaller number.

NOTICE OF GRANTING FRANCHISE. Code, section 955, which applies to cities acting under special charters, provides that no franchise for water works shall be authorized until after publication of a notice of the application; and section 956 enacts that the council may submit the question of granting a water franchise to a vote of the people, or that the mayor may submit the question on the petition of twenty-five property owners of each ward in the city. A notice of application for a franchise stated that certain persons had applied for a franchise to construct and operate a system of water works, and for the service of water to the city. *Held,* that it is the intention that the notice shall advise the property owners not only of the franchise, but of its terms, and the notice was insufficient to authorize the granting of a franchise.

CHANGE IN TERMS OF FRANCHISE AFTER NOTICE GIVEN. The terms of a franchise, as proposed, cannot be materially changed after the notice, nor after the question has been submitted to a vote of the people as originally drawn.

*Appeal from Linn District Court.*—HON. W. N. TREICHLER, Judge.

FRIDAY, DECEMBER 20, 1901.

THE city of Cedar Rapids is a city acting under a special charter. In March, 1900, its counsel passed an ordinance granting to John H. Brown and his assigns a franchise to construct, maintain, and operate a system of waterworks in said city. The franchise, when accepted, was to continue for the term of 25 years. It was assigned in May, 1900, to the City Water Company of Cedar Rapids, Iowa, by whom it was accepted in June of the same year. When the franchise was applied for by Brown, an

ordinance was drawn, and passed to its first reading, which contained the following provision, as section 12 thereof: "Sec. 12.   The city of Cedar Rapids reserves the right to own, control and operate the water plant system constructed by the said John H. Brown, his successors, assigns, executors, or administrators, at any time that the electors of the city of Cedar Rapids shall authorize the city council to assume such control, ownership and operation.   But in the event of the said city of Cedar Rapids assuming the said ownership and operation, all revenues from private consumers shall belong to the city; the grantee herein shall reserve only and have the right to reserve all hydrant rental to the amount of $38,000 per annum for a period not to exceed twenty-three years from the time this ordinance and rental contract becomes effective, at the end of which time the said water plant system, under the exercise of this option, shall be the property absolutely of the said city of Cedar Rapids, free and clear of any lien, claim, or incumbrance of any kind thereon, owned or held by the said grantee, his successors, assigns, executors or administrators and held by others."   Thereafter the following notice was published:  "Notice is hereby given that John H. Brown and his assigns have made application to the city council of the city of Cedar Rapids for a franchise and permission and authority to construct, maintain, and operate a system of waterworks within the streets, avenues, alleys, roads, parks, and public places within the limits of the city of Cedar Rapids, Iowa, and for the purpose of placing, replacing, and taking up and connecting water mains, hydrants, pipes, and valves for the service of water to the city of Cedar Rapids and its inhabitants, city of Cedar Rapids, by John M. Redmond, Mayor.   J. D. Blain, Recorder." When the ordinance was finally passed, section 12, above referred to, had been eliminated.   In other respects the ordinance was passed as first introduced.   Section 9 of the ordinance provides among other things, that the

city of Cedar Rapids agrees to rent, "and does hereby rent, from the grantee, for the period of twenty-three years, from and after the completion and acceptance of the water works, * * * four hundred hydrants at an annual rental of thirty-eight thousand dollars, to be paid by the city treasurer * * * in semi-annual payments on the first days of April and October of each year." Said section also contains this farther provision: "In consideration of the above rental the grantee shall furnish water without additional charge or cost to the city for all city buildings and to all parks now or hereafter owned by the city, and to all churches, parsonages and public schools within the city." Section 14 provides for the annual levy of not to exceed a five-mill tax to meet this hydrant rent, and make such levy irrepealable. It also provides for the payment of the hydrant rental from a special tax for such purpose, if deemed best by the city. The plaintiffs are resident taxpayers of Cedar Rapids, and bring this action in equity to restrain the city from proceeding under the ordinance in question, on the ground that it is unlawful and void. The pleadings are lengthy, and no good end can be accomplished by stating more than this is necessary to a proper understanding of the question we shall discuss, and this we will do as we proceed. There was a decree below finding the ordinance void, and granting the relief prayed. The defendant appeals.—*Affirmed.*

*Wood & Oakley, J. H. Jamison,* and *John N. Hughes* for appellants.

*Chas. A. Clark & Son* and *Wm. G. Clark* for appellees.

SHERWIN, J.—To enable a better and a clearer understanding of the question which we are called upon to decide in this case, we will give a short, general synopsis of events in connection with the passage of the ordinance attacked. There is another "Richmond" who has occupied the field, at least partially, for many years. The water and service of

the old waterworks company were not entirely satisfactory to all of the citizens, and not at all so to the city council as a body.   Ways and means were sought whereby the supply of water for the inhabitants of the beautiful city on the Cedar could be made purer and better.   The question of municipal ownership was agitated, and some means sought through which this highly desirable end might be attained. Before the ordinance in question was offered, it was conceived by at least some members of the council that a way might be blazed whereby municipal ownership of a system of waterworks could in time be brought about.   That this proposition cannot be denied is evidenced by section 12 of the ordinance, which appears in the statement preceding this opinion.   After the notice of the application for the franchise had been published, an election was called to vote upon the question, propounded in the following form: "The city of Cedar Rapids is authorized to enter into a contract to lease, control, maintain, and operate a waterworks system, to cost not less than $500,000, at an annual rental of $38,000, to be paid by the city in two equal installments on the first day of April and October of each year for a period of twenty-three years; the payment of the rental to be provided for by the levy of a tax by said city as hydrant rentals.   The city to fix the rate for private consumers, and to collect all rents and water rates from private consumers, all of which collections shall inure to the exclusive benefit of said city; and said waterworks system to become the absolute property of the city of Cedar Rapids, free and clear of any lien or claim of any kind whatsoever, at the expiration of said period of twenty-three years.   The proposition was carried by a large majority after what seems to have been quite a vigorous canvass, in which the benefits to be derived by the city from the ownership of the water supply were fully discussed.   Brown had never consented to section 12 of the proposed ordinance. He would not consent to it, because it would vests rights in

the city which would in all probability prevent bonding the franchise and works for the funds necessary to build the plant. For this reason the obnoxious section was taken out of the ordinance before its final passage, but after it was safely passed an agreement was entered into whereby every dollar of the capital stock which had been issued by the City Water Company of Cedar Rapids, the assignee of the franchise and contract with the city (7,680 out of 7,683 shares of such stock being held by John H. Brown), was included in a pretended option, the exercise of which it was supposed by the city council would vest the absolute title to the water plant in the city, without any farther payment therefor than the $38,000 annually stipulated to be paid as hydrant rent during the life of the contract,—23 years. It is said by the appellant that it is not worth while to discuss this question, for the reason that the city may never exercise the option. We concede that the pretended option is in very intangible form, but, for our purposes, it is not necessary to determine whether the city may or may not at some future time derive the hoped for benefit from it. No one can read the record in this case without being forced to the conclusion that the hydrant rental of $95 per hydrant for 400 hydrants, extending over a period of 23 years, was intended to cover something more than the reasonable value of the supply of water and the fire protection to be furnished. If there were a contract for the transfer of this property to the city in consideration of the excessive rent to be paid, it would be void, because it would be an attempt to do by indirection what the constitution expressly says may not be done by a municipality. *Litchfield v. Ballou,* 114 U. S. 192 (5 Sup. Ct. Rep. 820, 29 L. Ed. 132); *Windsor v. City of Des Moines,* 110 Iowa, 175; *Earles v. Wells,* 94 Wis. 285 (68 N. W. Rep. 964, 59 Am. St. Rep. 886). If we take the view claimed,—that it is not an attempt to evade the restriction as to indebtedness,—we are met with convincing proof that the rental agreed to be paid for

hydrants was determined and fixed on the theory and with a tacit understanding, at least, that it would at the end of the designated period not only pay a reasonable rent therefor, but would also repay the original cost of the plant; and we believe the expert's figures before us show that it would do even more than this. Another earmark as to the intent and purpose of this high rate is to be found in the provision for free water for all public schools and for all churches and parsonages. Still another may be found in the stipulation for a greatly reduced rate to private consumers,—so low, some of the evidence shows, that it would not cover actual cost. It is undoubtedly true that ordinances of a municipality, when passed by legislative authority, are to be given great force and effect, but they are not sacred, by any means; and it is equally as true that, where general power is given a municipality, it must be exercised in a reasonable manner, and, if it is not so exercised, it is the duty of the courts to protect those who may suffer thereby. Dillon Municipal Corporation (3d Ed.) sections 319, 320, 328, 423: *City of Des Moines v. Des Moines Waterworks Co.*, 95 Iowa, 348; *Meyers v. Railway Co.*, 57 Iowa, 558; *Town of State Center v. Barenstein,* 66 Iowa, 249; *Flynn v. Water Co.,* 74 Minn. 184 (77 N. W. Rep. 38). The testimony shows that $50 per hydrant would be a reasonable charge. The maximum present charge is $65 per hydrant for a much smaller number; and it is a well-known fact that, ordinarily, the greater the number of hydrants supplied, the cheaper is the rent. This ordinance not only provides for exorbitant hydrant rentals, but absolutely binds the city, so far as such a contract can, to continue this payment for nearly a quarter of a century. We hold this ordinance void because unreasonable as to hydrant rental, and as to the time for which such rentals are contracted. Code, section 725, 952; *Flynn v. Water Co., supra.*

We shall mention but one other matter in disposing of this case. Section 955 of the Code applies to cities acting under special charters, and provides that no franchise for waterworks "shall be granted or authorized, until after notice of the application therefor has been published once each week for four consecutive weeks in some newspaper published in said city." Section 956 provides that the council may upon its own motion submit the question of granting a franchise for the erection of waterworks to a vote of the people, and then says, "or the mayor shall submit said question to such vote upon the petition of twenty-five property owners of each ward in the city." Both of these sections relate to the same subject and should be construed together. We, look then, for the object of the notice before granting a franchise. It is clear that its purpose is to advise the property owners of the city not only that a franchise is desired, but also of the very terms of such franchise. What information could the property owners get from the bare statement that some kind of a franchise had been applied for, and how could they know whether they wanted the question submitted to a vote of the people, unless advised of the terms of the proposed franchise? It seems to us that the statute requiring notice is meaningless, unless it be based upon a definite proposition, put into such form that those interested may by examination thereof know just exactly what is contemplated. If this is correct, it follows that the terms of the proposed franchise or ordinance cannot be materially changed after notice; nor can it be changed, as was done in this case, after it had been submitted to a vote of the people as originally drawn. To permit such action on the part of the council is to sanction a fraud upon the people, and to place it within the power of any city council to grant any franchise it may see fit, under a notice or vote for a different one.

The judgment of the district court should be, and is, AFFIRMED.