CITY OF DES MOINES, Appellant, v. CITY OF WEST DES MOINES, Appellee.

No. 47135.

(Reported in 30 N. W. 2d 500)

2

January 13, 1948.

F. T. Van Liew, City Solicitor, Paul Hewitt and Harvey Bogenrief, Assistant City Solicitors, and Hextell & Beving, of Des Moines, for appellant.

Fountain, Bridges, Lundy & Stephenson, of Des Moines, for appellee.

SMITH, J.—Section 1, chapter 120, Acts of the Forty-first General Assembly (section 6066-a1, Code, 1927, now section 392.1, Code, 1946) provides:

"Section 1. Joint action cities. When the boundary limits of cities or towns join and such cities or towns are located upon or adjacent to a river or stream, which furnishes drainage for such cities or towns, or either of them, and is also the source of water supply for the inhabitants of either or all of said cities or towns, such cities or towns are authorized to contract with each other for the joint use of the sanitary sewer system of either of such cities or towns for the purpose of furnishing a joint outlet therefor and to make provision therein for the payment of an agreed consideration for such joint use including an annual charge for the same."

The act became law April 16, 1925. On July 6, 1925, plaintiff and defendant (then known as City of Valley Junction) entered into the contract involved here. It is long and need not be set out in full. By preamble it establishes that the parties' situation exactly conforms to the requirements of the new statute; that the Raccoon River receives sewage from defendant and furnishes plaintiff's water supply; and that defendant (party of second part) desires to use plaintiff's (first party's) South West Sewer System as an outlet for its (defendant's) sanitary sewer system.

4

It then provides that in consideration of the payments thereinafter provided plaintiff "does hereby grant to the party of the second part the *continuing* right to connect" its sanitary sewer system to plaintiff's South West Sewer System. and to use same as an outlet, *"the connection to be made at the point, where opening has .heretofore been provided for* [describing location] *in anticipation of the possible use thereof"* by defendant. (Italics supplied.)

Defendant city agrees to pay $40,000 on November 1, 1925, $2,000 annually thereafter for ten years, and $2,500 annually for a second ten-year period. The contract further provides that defendant city, by giving notice sixty days before the expiration of the second ten-year period, "shall have the right to extend the privileges and rights herein granted for an additional period of ten years" and pay an annual sum equal to fifty cents per capita of its population at the time of giving said notice. Times of payment during this third ten-year period are fixed.

The contract then provides that defendant city *"may thereafter continue and extend the privileges and rights, herein granted, in periods of ten (10) years, by giving like notice and paying a like amount per capita annually thereafter * * *"*; and that. *"the amounts stipulated * * * shall constitute compensation in full from party of the second part for perpetual use (optional with said second party per above stated requirements) of said South West Sewer System * * ** for emptying into said sewer system all sewage and liquids accumulating in the sanitary sewer system of the party of the second part, for the treatment and disposal of same." (Italics supplied.)

The contract also contains provisions whereby plaintiff agrees to hold defendant harmless in certain contingencies and gives plaintiff the right to cancel on sixty days' notice in event of defendant's default in making timely payments (such cancellation to be effective if default be not made good during the sixty-day period); or, alternately, to waive the default and sue defendant for the amount due.

Plaintiff's petition is in two counts. Count one sets out the contract, alleges its execution and the existence of the facts

authorizing it under the statute, that the parties have since operated under it and that defendant is claiming the contract contains an enforceable option whereby it can exercise its privilege for an additional ten years from and after June 1, 1946, by paying the annual fee equal to fifty cents per person and perpetually in ten-year periods thereafter.

Plaintiff further alleges that the contract was never a binding contract for more than a year because it is in legal effect a lease and subject to the provisions of section 6580, Code, 1924 (now section 416.108, Code, 1946), which permits leases for one year only.

Plaintiff also claims: That its council in 1925 had no power by contract to bind successor councils; that the option feature is in any event void because lacking in mutuality; that it has built a sewage disposal plant, and defendant's proportionate share of the cost of operation is far in excess of what defendant proposes to pay; that the claimed perpetual option is void as against public policy; that it is unreasonable, and if the population of defendant should increase materially the financial burden of enlarging the sewer facilities might well exceed plaintiff's constitutional limit of indebtedness; and that plaintiff has no speedy and adequate remedy at law.

Count two realleges all of count one and enlarges upon the cost of operation, stating it is now about $1.05 per person for plaintiff's inhabitants as against only the fifty cents per person which defendant would pay under the option contract.

The prayer is in the alternative: First, that the contract be decreed void and defendant perpetually enjoined from using plaintiff's sewer facilities; or second, that defendant be required to pay a sum per person of its population equivalent to the cost to plaintiff per person.

Defendant moved to dismiss upon the ground that the petition does not state a cause of action and shows on its face the contract is valid and binding. The court sustained this motion and the plaintiff has appealed. It urges only one error but submits seven brief points which we shall discuss in their order.

I. The first point argued is to the effect (a) that unless an option is supported by a sufficient consideration it is rev-

ocable and not binding, and (b) that while good at law it may not always be enforceable in equity. .

The propositions are sound and the authorities cited undoubtedly support them. But we see no applicability to the facts here. The option is a part of the contract and supported by the same consideration. Defendant has paid a total sum of $85,000 over a twenty-year period. It is not for us under the terms of the contract to say there is no consideration to support the option. Undoubtedly the parties intended the cash payments to pay for both the service and the option. Citation of authorities seems unnecessary, but see Larson v. Smith, 174 Iowa 619, 630, 631, 156 N. W. 813.

Furthermore, plaintiff was, by the contract, getting rid of the menace to the purity of its source of water supply, a valuable consideration in itself and one suggested by the condition written into the statute. There is clear consideration for granting the option. .

The answer to the second proposition is equally apparent. Conceding that all option contracts are not enforceable in equity, it does not follow that a court of equity will *annul* such a contract merely because it would not *enforce* it. This is not a suit by the City of West Des Moines to enforce the contract but by plaintiff to have it declared void. If the contract is good at law certainly equity will not annul it even though it may be one not specifically enforceable. In respect to enforceability, moreover, a contract resulting from the exercise of a legal option stands on the same footing as any other contract. Its enforceability depends on the nature of the contract, not on the method by which it is consummated.

Assuming the legality of the option feature of the original contract, its exercise by defendant resulted either in an extension of the original, or the creation of a new, contract for the ten-year period commencing June 1, 1946. It is not necessary to determine which. Nor is it necessary to determine whether it can be specifically enforced. If legal, equity will not declare it void.

II. Appellant further argues that the contract is unreasonable and therefore void (a) because of its perpetual char-

acter and (b) because it is a contract for public utility service and rates therefor cannot by contract be fixed for perpetually renewable ten-year periods.

This assignment requires consideration not alone of the character of the service but also of the capacity in which each party contracted and the nature of the contract itself.

The authorities quite generally refuse to attempt an all-inclusive definition of the term "public utility." 43 Am. Jur., Public Utilities and Services, section 2; 51 C. J., Public Utilities, section 1. "As its name indicates, the term * * * implies a public use and service to the public * * *." 43 Am. Jur., section 2, supra.

It would seem the business of disposing of sewage comes within the classification. See Payne v. City of Racine, 217 Wis. 550, 259 N. W. 437; Toohey v. Town of Canton, 177 Okla. 426, 60 P. 2d 729; State ex rel. Edwards v. Millar, 21 Okla. 448, 96 P. 747; Town of Afton v. Gill, 57 Okla. 36, 156 P. 658. However, see, contra, Village of Ridgewood v. Hopper, 13 N. J. Misc. 775, 181 A. 150; Holland v. Heavlin, 299 Mich. 465, 300 N. W. 777.

But even though the service be impressed with a public interest the question arises, what public? It is said "the principal determinative characteristic * * * is that of service to, or readiness to serve, an indefinite public * * * *which has a legal right to demand and receive* its services or commodities." 43 Am. Jur., section 2, supra. (Italics supplied.)

Is the City of West Des Moines a part of the public that a Des Moines public utility must serve? Obviously not; and therein lies much of the fallacy in plaintiff's reasoning here. The point has been effectively decided by this court in Incorporated Town of Sibley v. Ocheyedan Elec. Co., 194 Iowa 950, 957, 959, 187 N. W. 560, 563.

In that case the Town of Sibley, owner of a municipal electric plant, furnished current to defendant company which served the neighboring town of Ocheyedan. Delivery was made at the corporate boundary of Sibley under a contract fixing the rate for a period of twenty years. Before the expiration of this period plaintiff town by ordinance attempted to revise

the rates under its general legislative power to regulate and fix electric rates.

We held that the rate-making power given the town "in so far as the inhabitants of the municipality were concerned, was the exercise of a legislative function" fixing rates subject to modification by ordinance from time to time as deemed equitable. But that as to sales to a customer outside the municipality the rate is to be fixed by contract. It is true this decision is reached by statutory construction but it implies a relationship to the outside customer fundamentally quite different from that to the "public" the utility plant was built to serve and to which it owed service. See, also, City of Phoenix v. Kasun, 54 Ariz. 470, 97 P. 2d 210, 213, 127 A. L. R. 84; Childs v. City of Columbia, 87 S. C. 566, 70 S. E. 296, 34 L. R. A., N. S., 542.

The decision is in legal effect a holding that rates for utility service rendered by one public utility to another so that the latter may serve *its* public are not subject to regulation as are rates for service rendered by the producing public utility direct to its own public. Rates for service or commodities furnished from one public utility to another serving a different public are to be fixed by contract between the respective owners. It is, in a sense, a private transaction quite distinguishable from the service rendered to actual users whom it was created to serve.

The logic of this distinction is apparent. In its relationship to its public, i. e., the users who must depend on it for service and to whom it must render service upon request, the public utility can practice no discrimination. Its rates, like taxes, must be uniform and reasonable. It is a virtual, if not an actual, monopoly. In most cases, if privately owned and operated, it can only operate by virtue of a franchise granted under authority of the same public it is organized to serve. No such considerations affect its dealing with another utility serving another public.

This reasoning is pertinent here even though the service rendered by plaintiff and defendant to their respective publics is gratuitous. Defendant, instead of acquiring sewage-disposal facilities of its own for its own people, purchases the use of

plaintiff's facilities. In its relation to its inhabitants defendant operates as a public utility but its relationship to plaintiff is no different from its relationship to any other person or corporation from which it might have to purchase material or labor in order to render the service to its own public.

Nor did plaintiff contract as a public utility in dealing with defendant. It owed no duty to defendant. It could have refused to render it any service or could have exacted any price that defendant would have consented to pay. We must conclude the agreement is a business contract, in no way subject to legislative rate regulation. In that respect it is private, not public.

 III. The language of the statute places no time limitation upon the contracts it authorizes. When the contract was made plaintiff city's source of water supply was the Raccoon River which also furnished outlet for defendant city's sewer. An accommodating legislature essayed to make possible a mutual arrangement whereby this undoubtedly bad situation could be remedied. The contract reveals internal evidence that the legislation, though general, was for the special benefit of the two cities. It must be assumed the legislation contemplates, and the parties by their contract intended, a permanent, not a temporary, solution.

We find no case that would justify us in annulling this contract as contrary to public policy because of its potentially perpetual character. Nor do we find authority expressly supporting it. One text writer announces this principle:

"While public bodies may make contracts for legitimate public purposes and become liable for failure to observe them, it is not consistent with the discretionary or legislative powers vested in them and effected through their general governing body in the discharge of duty, for them by contract to grant exclusive privileges having the character of perpetuity." Donnelly on The Law of Public Contracts (1922), section 70, citing Syracuse Water Co. v. City of Syracuse, 116 N. Y. 167, 22 N. E. 381, 5 L. R. A. 546; Westminster Water Co. v. Westminster, 98 Md. 551, 56 A. 990, 64 L. R. A. 630, 103 Am. St. Rep. 424.

See, also, 38 Am. Jur., Municipal Corporations, section 498.

But an examination of the authorities cited by the text writer makes clear they are not in point here. In one (the Syracuse case) there was involved the right of a city to make an exclusive, perpetual contract with a water company to furnish all the water needs of the city and its inhabitants. In the Westminster case the city had entered into a perpetual contract with the water company by which the latter was to furnish its water needs and the city was to levy for all time to come an annual tax, the proceeds of which were to be paid for the service. In each case the court held the execution of the contract was an exercise by the city of its legislative power and therefore such a contract was ultra vires. The municipality cannot make contracts which will embarrass or control its legislative powers and duties, or which amount to an abrogation of its governmental function or of its police power. 44 C. J., section 2129. The cases cited by plaintiff on this point are all of this character. See, e. g., Cedar Rapids Water Co. v. City of Cedar Rapids, 118 Iowa 234, 91 N. W. 1081; City of Des Moines v. Des Moines Waterworks Co., 95 Iowa 348, 64 N. W. 269; Hall v. City of Cedar Rapids, 115 Iowa 199, 88 N. W. 448.

The courts have even upheld perpetual franchises where no express legislative or constitutional prohibition was shown. City of Owensboro v. Cumberland Telephone & Telegraph Co., 230 U. S. 58, 33 S. Ct. 988, 57 L. Ed. 1389; City of Owensboro v. Owensboro Water Works Co., 243 U. S. 166, 37 S. Ct. 322, 61 L. Ed. 650; Northern Ohio Traction & Light Co. v. State of Ohio ex rel. Pontius, 245 U. S. 574, 38 S. Ct. 196, 62 L. Ed. 481, L. R. A. 1918E, 865; City of Covington v. South Covington & Cincinnati St. Ry. Co., 246 U. S. 413, 38 S. Ct. 376, 62 L. Ed. 802; 2 A. L. R. 1099.

But all these cases involved in some manner an exercise of the legislative power. We need not attempt to reconcile their holdings. Plaintiff here contracted for a valuable consideration to render a service to one to whom it owed no duty and occupied no legislative relationship. The statute authorized it to so contract. Defendant, in order to serve its public, contracted with

plaintiff to furnish service instead of with someone to furnish work and material for constructing a sewer outlet of its own. It was a business transaction which either could have refused to enter into.

We find no very satisfactory precedents to light our way. Defendant cites some New Jersey cases that seem in point and quite conclusive until more closely examined and analyzed.

The City of New Brunswick and the Borough of Milltown were situated in relation to each other substantially as are plaintiff and defendant here. Under adequate statutory authority they entered into a contract with each other somewhat comparable to the contract involved here. For convenience we shall refer to them as the City and the Borough.

The City became dissatisfied with the contract, as has plaintiff here. It commenced an equitable suit for cancellation, as plaintiff here has done. The case was tried before the vice-chancellor, who dismissed the bill saying:

"Complainant's contention that the agreement is void as against public policy because it is by its terms perpetual and imposes a never ending burden upon complainant is without merit. The power delegated to the contracting municipalities by the statute contains no limitation with respect to the length of time for which such agreement may be made; hence this agreement made pursuant to such statutory authority may not be condemned because its duration is without limitation." City of New Brunswick v. Borough of Milltown, 1944, 135 N. J. Eq. 310, 314, 38 A. 2d 288, 290.

This was a trial court decision. It seems never to have been appealed. In a companion case, however, brought to enjoin prosecution of a law action to recover pay for the service the city had agreed to render gratuitously, the same vice-chancellor held his decision (above quoted) adjudicated the *validity* of the contract. Borough of Milltown v. City of New Brunswick, 1946, N. J. Ch., 46 A. 2d 562; Borough of Milltown v. City of New Brunswick, 1946, 138 N. J. Eq. 552, 49 A. 2d 234.

But on appeal the Court of Errors and Appeals, October

27, 1947, reversed this later case, holding the question of *terminability* was not res judicata by reason of the original decree, saying:

"The case as there presented did not actually or necessarily involve the issue whether the contract, if valid, could thereafter be terminated by either party upon proper notice. * * * It is at most a finding that, if the parties take no steps toward termination, the agreement will continue to operate without limitation as to time." Borough of Milltown v. City of New Brunswick, 140 N. J. Eq. 565, 55 A. 2d 209, 211.

It is perhaps to be explained that these New Jersey cases apparently involved a contract that was not by express language made perpetual but that merely contained no stated period of duration or fixed date of termination. There is a slight implication that if expressly made perpetual the contract would be upheld. At least, the decision of the vice-chancellor so indicates.

We have in the instant case a contract that clearly contemplates "perpetual use (optional with second party * * *)" of plaintiff's sewer facilities. There is no question of terminability so long as defendant continues to exercise its options. While the cited New Jersey cases are far from conclusive, we think there is other ample authority for upholding its validity.

Without implying that the contract is in any sense a lease, it bears an analogy to leases worth considering. It is said "the generally accepted view [as to leases] is that a provision clearly giving the lessee and his assigns the right to perpetual renewals is valid in the absence of some statutory prohibition." 32 Am. Jur., Landlord and Tenant, section 967. Such provisions are not favored but are upheld. 32 Am. Jur., section 967, supra. See, also, sections 968, 969; 51 C. J. S., Landlord and Tenant, section 61.

In the above-cited C. J. S. text it is said:

"Perpetual leases are not favored in the law nor are covenants for continued renewals tending to create a perpetuity * * *. *Nevertheless, where the intention to create a right of renewal in perpetuity is clearly and unambiguously expressed,*

*the obligation so created is valid and enforceable, in the absence of statutory prohibition.*" (Italics supplied.)

See, also, In re Hubbell Trust, 135 Iowa 637, 645, 646, 113 N. W. 512, 13 L. R. A., N. S., 496, 14 Ann. Cas. 640, and Hess v. Iowa Light, Heat & Power Co., 207 Iowa 820, 825, 221 N. W. 194, 196. The last-cited case was not a lease case but involved the furnishing of light and heat. We said, arguendo:

"A construction of a contract conferring a right in perpetuity will be avoided, unless compelled by the unequivocal language of the contract. 13 Corpus Juris 604."

This, of course, implies the converse: that when unequivocal language compels, such a contract will be upheld.

In fact we find nothing in the law of contracts that denies validity to a contract as against public policy on the mere ground that it is made, or may be made, perpetual in operation. On the contrary it seems every contract is prima facie permanent and irrevocable with the burden on one who contends otherwise to show either some language in the contract itself or something in its nature from which it may be reasonably implied to be terminable. 17 C. J. S., Contracts, section 397.

The subject matter of the instant contract justifies a provision for perpetuity. The intent of the parties is clear and we have no alternative but to sustain it.

█ IV. Plaintiff contends that its city council had no authority to bind its successors in office. The cases it cites all involved exercise of legislative powers. Even powers of that character may be exercised to bind future councils if the statute permits. Iowa-Nebraska Light & Power Co. v. City of Villisca, 220 Iowa 238, 247, 261 N. W. 423.

But the discussion is not pertinent here since we hold this a business contract. In such matters the rule contended for does not apply. 44 C. J., Municipal Corporations, section 2168; 37 Am. Jur., Municipal Corporations, section 66.

█ V. Plaintiff also argues that because of section 6580, Iowa Code, 1924 (now section 416.108, Code, 1946) it had no

right to lease city property for a term exceeding one year. The ready answer is that this contract is not a lease within the meaning or intention of that statute. A one-year contract for sewage disposal under the conditions prescribed by the 1925 Act would be unthinkable as utterly inadequate and impracticable. We cannot attribute such an intention to the legislature. On the contrary we think the intention was to permit these cities (and others similarly situated) to work out a *solution* of their water and sewage problems, not a temporary expedient subject to possible yearly change. The purpose of the legislation as applied to the parties here was to make possible a disposition of defendant city's sewage without danger of contaminating plaintiff's water supply. This means a long range program, not limited to the life of a city council or by a statute clearly designed to apply to entirely different situations.

VI. Nor do we find merit in plaintiff's suggestion that there is or may in the future be an impossibility of performance by plaintiff because of possible limitation on its taxing power. Perhaps a sufficient answer now would be that no such existing situation is pleaded. There will be time enough to bid the Devil "good morrow" when we meet him.

The legislature knew that sewers are maintained by taxation. The power to contract includes the power to contract unwisely. But this does not make the unwise contract void or even voidable. We do not imply this contract is improvident but merely concede it for the purpose of appraising plaintiff's argument.

We are convinced the statutes furnish ample power to both these cities to perform the terms of the contract they have entered into.

VII. Plaintiff finally urges that the contract should be condemned because of its indemnity provisions by which plaintiff agrees to hold defendant harmless in certain contingencies. We have studied these provisions with care and are of the opinion they do not add any burden of liability on plaintiff not inherent in the nature of the contract, nor do they impose any probable burden upon plaintiff growing out of negligence of defendant. They are merely incident to the main

purpose of the contract and within the intendment of the legislation that authorized it.

We have followed the order of plaintiff-appellant's presentation and have not mentioned the affirmative propositions advanced by defendant in support of the trial court's decision, viz., that plaintiff is estopped by its long period of acquiescent performance and retention of the fruits of the contract and its failure to offer to do equity.

In the light of what we have said, discussion of these propositions is unnecessary. The decision of the trial court is, for the reasons stated, affirmed.—Affirmed.

MULRONEY, C. J., and OLIVER, BLISS, HALE, GARFIELD, MANTZ, and HAYS, JJ., concur.