Thomas E. SAMPSON and Marvin E.
Diemer, Appellants,

v.

CITY OF CEDAR FALLS, Iowa, et
al., Appellees.

No. 2-57753.

Supreme Court of Iowa.

July 31, 1975.

Jacobson, Price & Correll, Cedar Falls, for appellants.

Mershon, Snow & Knock, Cedar Falls, and Ahlers, Cooney, Dorweiler, Haynie & Smith, Des Moines, for appellees.

UHLENHOPP, Justice.

This appeal involves a number of challenges to a plan by a city and others to enter into a joint project for generating electricity.

The City of Cedar Falls, Iowa, owns and operates a large electric generating plant and distribution system which it built and improved by issuing revenue bonds. In excess of $12,200,000 of such bonds are outstanding, secured by first lien on the net revenues of the electric utility.

Plaintiffs are voters and taxpayers in Cedar Falls and customers of the electric utility. One of them is also a bondholder.

The case involves three principal statutes. The first is chapter 397 of the Code of 1973, more particularly §§ 397.9 through 397.19 which have to do with revenue bonds for a plant such as the Cedar Falls electric utility. This long-standing chapter authorizes cities to build, improve, and operate electric utilities and to issue revenue bonds.

In 1972 the legislature enacted the second principal statute, chapter 1088 of the Acts of the 64th General Assembly, more particularly the portion of chapter 1088 which now constitutes §§ 384.80 through 384.94 of the Code of 1975. Those 15 sections provide a new procedure for issuing revenue bonds. Section 384.94 provides, however, that projects and proceedings for the issuance of revenue bonds and temporary obligations which are commenced before the effective date of chapter 1088 may go forward under "old" chapter 397.

Then in 1973 the legislature enacted chapter 238 of the Acts of the 65th General Assembly, now chapter 390 of the Code of 1975. This chapter involves an entirely new concept in Iowa law—joint ownership of electric facilities by cities, electric cooperatives, and investor-owned electric utility

corporations. See also ch. 28E, Code 1975, and H.F. 908, 66 G.A.

When we speak of chapter 397 or its sections, we refer to chapter 397 or its sections in the Code of 1973. When we speak of §§ 384.80 through 384.94 or of chapter 390 or its sections, we refer to those provisions in the Code of 1975.

The evidence indicates that the consumption of electricity continually increases in this country. The cost of fuel also goes up. In order to produce ever-larger quantities of electricity at moderate per-unit cost, public and investor-owner utilities have found much larger generating facilities to be necessary. Various cooperatives and investor-owned utilities have therefore joined in the construction, ownership, and operation of large electric generating facilities. Chapter 390 authorizes municipal utilities to enter into such projects with cooperatives and "private" utilities, subject to certain restrictions. Section 390.5 permits the municipal utility to finance its share in the manner authorized for financing a wholly-owned municipal utility.

After notice and hearing, Cedar Falls, acting through its electric utility trustees, entered into a joint agreement with electric cooperatives and investor-owned electric utilities for the design, construction, and operation of a large electric generating plant in Pottawattamie County, Iowa. Cedar Falls' undivided interest in the project would be 3.1%. Its portion of the total cost is estimated at $7.7 million, although this cannot be forecast exactly. Cedar Falls would have to advance sums during design and construction. The largest interest would be owned by Iowa Power & Light Company, which as managing agent would coordinate design as well as construction and operation.

Plaintiffs brought action to enjoin Cedar Falls and others from proceedings with the joint agreement while existing revenue bonds are outstanding and to obtain a declaratory judgment on several issues. The trial court held for Cedar Falls and the other defendants in all respects. Plaintiffs appealed.

As in the trial court, plaintiffs contest the entire scheme on three main fronts, and they mount several attacks on two of those fronts. On the first front, plaintiffs challenge the constitutionality of one or more of the statutes under which the joint agreement was made, on the grounds of permitting the loan of public credit and the use of public funds for private purposes and without due process, of not operating uniformly, of embracing more than one subject with an insufficient title, of going beyond local affairs, of impairing the obligation of contracts in two respects, and of having invalid effective dates. On a second front, plaintiffs contend that Cedar Falls could not finance this project under chapter 397, which stood repealed on July 1, 1975. And on the third front, plaintiffs challenge the sufficiency of Cedar Falls' compliance with chapter 390, on the grounds of inadequate notice and hearing, inapplicability of such chapter to Cedar Falls as a city, and omission of mandatory clauses in the joint agreement.

I. *Constitutionality of Statutes.* On the first front, plaintiffs face the heavy burden of overcoming the presumption of constitutionality which attends acts of the General Assembly. *Keasling v. Thompson,* 217 N.W.2d 687 (Iowa).

(a) Plaintiffs' initial attack is on chapter 390 which allows joint facilities such as this one. This attack is based on § 1 of article VII and § 31 of article III of the Iowa Constitution as well as on § 9 of article I of the Iowa Constitution and § 1 of the Fourteenth Amendment to the United States Constitution.

Section 1 of article VII of the Iowa Constitution states that the credit of the State shall not in any manner be given or lent to or used in aid of any individual, association, or corporation. Section 31 of article III states that no public money or property shall be appropriated for any local

or private purposes except on a two-thirds vote of the General Assembly. Plaintiffs' theory under these constitutional sections appears to be that 96.9% of the generating plant will be owned by Cedar Falls' co-owners and that this violates the cited sections. Plaintiffs overlook the fact that the proportion of Cedar Falls' ownership will be the same as the proportion of its contribution— 3.1%. Assuming that §§ 1 and 31 apply to cities, it appears to us that Cedar Falls is using its credit and spending its money for itself. See *Green v. City of Mt. Pleasant*, 256 Iowa 1184, 131 N.W.2d 5; *Whelan v. New Jersey Power & Light Co.*, 45 N.J. 237, 247, 212 A.2d 136, 141 ("the municipality entered into a bargain solely for its own dollar profit"); *Public Utility Dist. No. 1 v. Taxpayers and Ratepayers of Snohomish County*, 78 Wash.2d 724, 479 P.2d 61; 63 Am.Jur.2d Public Funds § 59 at 447–448. Parallel to Cedars Falls' proportion of ownership and contribution, under § 390.4(6) and (7) the interest of Cedar Falls in the project and in the revenues will be liable only for Cedar Falls' obligations. We hold that chapter 390 does not contravene §§ 1 and 31.

Plaintiffs also argue substantive due process—a city should not be allowed to enter into large, long-term agreements such as this one with cooperatives and business corporations. Iowa Const. art I, § 9; U.S. Const. Amend. XIV, § 1. To be sure, chapter 390 of the Code which allows this to be done is novel. Risks are inherent in ventures involving several participants. Cedar Falls may hold up its end of the project, but what if other participants become over-extended and the enterprise collapses? The project will be considerably different from Cedar Falls' present generating facility, which it wholly owns and controls. These risks are legislative considerations, however, and the General Assembly has spoken in chapter 390. See *Peel v. Burk*, 197 N.W.2d 617 (Iowa); *Dickinson v. Porter*, 240 Iowa 393, 35 N.W.2d 66. Our question at this point can only be whether chapter 390 violates the due process clauses of the Iowa and United States Constitutions.

■ Procurement by a city of an adequate supply of electric power for the needs of its consumers is a public function. *Brutsche v. Town of Coon Rapids*, 223 Iowa 487, 272 N.W. 624. Formerly a separate plant owned by a city could provide electricity efficiently but today larger plants serving more distributors are economically beneficial. The legislature concluded that cities should be allowed to join the trend toward larger, jointly-owned facilities. We are not prepared to say chapter 390 contravenes the due process clauses. See 62 C.J.S. Municipal Corporations § 139 at 281–282. See also *City of Des Moines v. City of West Des Moines*, 239 Iowa 1, 30 N.W.2d 500; *Iowa-Nebraska Light & Power Co. v. City of Villisca*, 220 Iowa 238, 261 N.W. 423.

■ With a project such as this, a city council may by contract bind future councils. *City of Des Moines v. City of West Des Moines*, 239 Iowa 1, 30 N.W.2d 500; 56 Am.Jur.2d Municipal Corporations, Counties & Other Political Subdivisions § 154 at 206–207; 63 C.J.S. Municipal Corporations § 987 at 549.

We thus reject plaintiffs' due process argument.

■ (b) Plaintiffs next attack chapter 390 under § 6 of article I of the Iowa Constitution, which requires all laws to have a uniform operation. Plaintiffs argue that chapter 390 unconstitutionally limits participation to cities, cooperatives, and investor-owned utilities and that it omits coal and oil companies and others who could provide valuable services or materials to the joint facility. This argument is not tenable under the decisions of this court on classification. *Lee Enterprises, Inc. v. Iowa State Tax Comm'n*, 162 N.W.2d 730 (Iowa); *Green v. City of Mt. Pleasant*, 256 Iowa 1184, 131 N.W.2d 5.

(c) Plaintiffs contend, next, that the act underlying chapter 390 violates § 29 of article III of the Iowa Constitution in two respects. That section of the constitution

requires an act to embrace but one subject and matters properly connected therewith and to express the subject in the title.

As to our interpretation of § 29 of article III, see *Green v. City of Mt. Pleasant*, 256 Iowa 1184, 131 N.W.2d 5; *Stanley v. Southwestern Community College Merged Area*, 184 N.W.2d 29 (Iowa); and *Long v. Board of Supervisors of Benton County*, 258 Iowa 1278, 142 N.W.2d 378. Chapter 390 authorizes joint agreements for acquiring, financing, and operating facilities for the generation, acquisition, or transmission of electricity. The underlying act is chapter 238 of the Acts of the 65th General Assembly, and the title of that act states: "AN ACT to amend title fifteen (XV) of the Code [city and town government] to provide authority for municipally-owned utilities to participate with other utilities and electric cooperatives in the acquiring and financing of jointly-owned facilities for the generation, acquisition or transmission of electric energy."

■ We are of the opinion that the sections of the act embrace but one subject and matters properly connected therewith and that the title fairly expresses the subject of the act.

(d) Next plaintiffs argue that chapter 390, and the joint agreement under it, unconstitutionally permit Cedar Falls to issue bonds for a distant power plant which cannot be said to be within the "local affairs" of Cedar Falls. We will assume, arguendo, that this power plant project does not constitute "local affairs" either generally or within the Home Rule Amendment, § 40, article III, Iowa Constitution.

Chapter 390 undoubtedly authorizes a city to enter into a project such as this one. Plaintiffs' interesting argument seems to be premised on the thought that the legislature cannot constitutionally give cities power to deal with matters which are not "local affairs." While the Home Rule Amendment speaks of "local affairs and government," nothing in the Amendment itself says the legislature cannot grant cities power to deal with matters which are not local affairs, nor can we find such an express proscription elsewhere in our constitution. As we stated in *Bechtel v. City of Des Moines*, 225 N.W.2d 326, 332–333 (Iowa), "The seat of legislative authority is the General Assembly, and that body may exercise all rightful legislative powers not expressly prohibited. *Purczell v. Smidt*, 21 Iowa 540. In connection with the exercise of such powers by the General Assembly, we do not look to what the constitution authorizes but to what it prohibits."

■ We have no occasion at this time to say that the legislature may authorize cities to deal generally with matters which are not local affairs. Chapter 390 is a specific grant of power to deal with a specific, demonstrated need. We hold the grant of power by the legislature to be valid.

(e) Plaintiffs next contend that § 384.-83(6), § 384.84(1), and § 384.88 of the 1975 Code, and the joint agreement under them, violate the clauses in our constitution and the United States Constitution prohibiting laws impairing the obligation of contracts, § 21, article I, Iowa Constitution, and § 10, Article I, United States Constitution. They say two violations exist: permitting Cedar Falls to issue pledge orders in derogation of presently-outstanding bonds, and limiting remedies to receivership and mandamus.

The resolutions of Cedar Falls under which the presently-outstanding bonds were issued state that other bonds or obligations payable from earnings will be issued only subject to the priority and security for payment of such presently-outstanding bonds, except under certain conditions not now involved. Under § 397.9 of the 1973 Code and § 384.83(6) of the 1975 Code, a city may make pledge orders. These orders are usually made during construction, pending issuance of revenue bonds. The present joint agreement contemplates that Cedar Falls will make pledge orders during construction, which may take as long as seven years.

■ We find nothing in these statutes or in the joint agreement impairing rights under presently-outstanding bonds, as the pledge orders would be subject and junior to such bonds and to the resolutions authorizing them. See *Summey v. City of Ames,* 251 Iowa 1199, 104 N.W.2d 617; *Miehls v. City of Independence,* 249 Iowa 1022, 88 N.W.2d 50.

■ Section 384.88 of the 1975 Code restricts the remedies of bondholders to receivership and to mandamus to obtain specific performance, and plaintiffs say this reduces their remedies under presently-outstanding bonds. As we read § 384.88, however, it applies to bonds issued under §§ 384.80 through 384.94 and not to presently-outstanding bonds issued under prior statutes. Remedies under presently-outstanding bonds are not reduced.

(f) Plaintiffs contend, next, that the statutory effective date of §§ 384.80 through 384.94, and cities' right of election to have those sections become operable earlier than July 1, 1975, violate § 26 and § 1 of article III (Legislative Department) of the Iowa Constitution. Section 26 of article III states that no public law of the General Assembly passed at a regular session shall take effect until July 1st after passage, unless by publication. Section 1 states that the legislative authority of the state is vested in the General Assembly.

Sections 384.80 through 384.94 were §§ 161 through 175 of chapter 1088 of the Acts of the 64th General Assembly. Under § 9 of chapter 1088, §§ 161 through 175 (and other sections) became effective July 1, 1972, which would be July 1st after enactment, in conformity with § 26 of article III.

As amended, § 9 contains this qualification, however: until July 1, 1975, a city will be subject to only such of §§ 161 through 175 (and certain other sections) as it elects to come under. See 65 G.A. ch. 1212; *Bechtel v. City of Des Moines,* 225 N.W.2d 326 (Iowa). Plaintiffs contend that this qualification in § 9 contravenes § 26 of article III of the constitution on the effective date of acts, and also delegates the power of the General Assembly to cities to determine what shall or shall not be law.

■ We hold that the General Assembly may make laws passed at a regular session effective later than July 1 after passage. 73 Am.Jur.2d Statutes § 365 at 496; 82 C.J.S. Statutes § 400 at 962. See also *Santo v. State,* 2 Iowa 165; 1974 Op.Iowa Atty.Gen. 150; 1968 Op.Iowa Atty.Gen. 379. Hence the qualification in § 9 of chapter 1088 does not contravene the effective-date requirement of § 26, article III, of the constitution. See Code 1973, § 3.7.

Moreover, the election given cities to make certain sections operable as to them sooner than 1975 is valid. *Eckerson v. City of Des Moines,* 137 Iowa 452, 115 N.W. 177; *State v. Forkner,* 94 Iowa 1, 62 N.W. 772; *City of Des Moines v. Hillis,* 55 Iowa 643, 8 N.W. 638.

We thus uphold the constitutionality of the statutes as against plaintiffs' challenges.

II. *Applicability of Chapter 397.* Chapter 397 of the 1973 Code is the long-standing statute authorizing municipalities to build, own, and operate electric utilities and to issue revenue bonds therefor. As amended, § 199 of chapter 1088 of the Acts of the 64th General Assembly provides that chapter 397 stood repealed as of July 1, 1975.

Provisions in Chapter 1088 of the 64th General Assembly, now embodied in §§ 384.80 through 384.94 of the 1975 Code, authorize issuance of pledge orders and revenue bonds under a prescribed procedure. Chapter 397 of the 1973 Code likewise gives such authority and provides a procedure. Section 175 of chapter 1088, now § 384.94 of the Code, gives cities the following election:

Projects and proceedings for the issuance of revenue bonds, pledge orders, and other temporary obligations commenced before the effective date of [this

Act] may be consummated and completed as required or permitted by any statute or other law amended or repealed by [this Act], as though such repeal or amendment had not occurred, and the rights, duties, and interests flowing from such projects and proceedings remain valid and enforceable. Without limiting the foregoing, projects commenced prior to said effective date may be financed by the issuance of revenue bonds, pledge orders and other temporary obligations under any such amended or repealed law or by the issuance of revenue bonds and pledge orders under [this Act]. For purposes of this section, commencement of a project includes, but is not limited to, action taken by the governing body or authorized officer to fix a date for either a hearing or an election in connection with any part of the project, and commencement of proceedings for the issuance of revenue bonds, pledge orders, and other temporary obligations includes, but is not limited to, action taken by the governing body to fix a date for either a hearing or a sale in connection with any part of such revenue bonds, pledge orders, or other temporary obligations or to order any part thereof to be issued.

■ Plaintiffs agree that this project was commenced before the effective date of chapter 1088, but argue that the project may stretch out for seven years and the bonds may run for many more years. Hence, plaintiffs say, Cedar Falls should not be allowed to finance the project under chapter 397 which stood repealed as of July 1, 1975. Cedar Falls claims to the contrary that it has a right to proceed under chapter 397 or under §§ 384.80 through 384.94, as it chooses.

■ The project comes under § 175 of chapter 1088 which we have quoted, and Cedar Falls is therefore entitled to the choice which that section gives them. Plaintiffs' quarrel is essentially with the wisdom of § 175, but that is a legislative matter. The statute as enacted controls.

*Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563; *State v. Hall,* 227 N.W.2d 192 (Iowa).

III. *Compliance with Chapter 390.* On the third front, plaintiffs assert that the requirements of chapter 390 are not met because of inadequate notice and hearing, inapplicability of chapter 390 to Cedar Falls as a city, and omission of mandatory clauses in the joint agreement.

(a) As to plaintiffs' claim of inadequate notice and hearing, § 390.3 requires a hearing and notice thereof in accordance with §§ 23.1 to 23.11 of the Code, which deal with public contracts for improvements costing $5000 or more.

■ Cedar Falls gave notice. We have examined the notice and the proof of publication, both of which comply with the statute. Plaintiffs argue that the notice does not state the cost of the project or how the cost will be paid, but the statute contains no such requirements. See *Rice v. Hanrahan Co.,* 210 Cal. 625, 293 P. 57; *Escott v. City of Miami,* 107 Fla. 273, 278, 144 So. 397, 399 ("The notices given in this case substantially conformed to the terms of the particular statute here involved, and were therefore sufficient"); 63 C.J.S. Municipal Corporations § 1088 at 733–734, § 1093a at 742, § 1095a at 746; 72 C.J.S. Process § 10 at 1002. A copy of the proposed joint agreement was on file in the office of the clerk of the trustees of the Cedar Falls' electric utility, and the notice so stated.

Plaintiffs do not point out how the hearing itself was deficient, and we have been unable to find any deficiency from our examination of the record. Plaintiffs' challenge to the notice and hearing is not tenable.

(b) As to plaintiffs' claim that chapter 390 does not apply to Cedar Falls, plaintiffs contend § 390.2 confers power on a "city utility" to enter into a joint agreement, not on a city, and the City of Cedar Falls has undertaken to enter into this agreement.

We need not decide whether this claim would be valid under § 390.2 as originally enacted. By House File 908 of the 66th General Assembly, which by its terms applies retrospectively, the legislature changed the words "city utility" in chapter 390 to "city." The City of Cedar Falls thus has authority to enter into the joint agreement.

(c) As to plaintiffs' claim that the joint agreement omits mandatory clauses or has clauses which conflict with the statutes, plaintiffs rely on subsections 6 and 7 of § 390.4 in one respect, and on subsection 9 of the same section in another. House File 908 of the 66th General Assembly amends subsections 6 and 9, as well as subsection 8 which also bears on plaintiffs' claim. When we cite these subsections, we do so as they are amended.

Subsection 6 of § 390.4 requires a joint agreement to state in substance that a participant may be liable only for its own acts with respect to a joint facility, or as principal for the acts of the manager of the facility in proportion to the participant's percentage of ownership, and that a participant shall not be liable for the acts, omissions, or obligations of other participants. Subsection 7 requires the agreement to state in substance that the undivided interest of a participant in the joint facility may not be directly or indirectly charged with a debt or other obligation of another participant or be subject to any lien as a result thereof. Subsection 8, so far as we are now concerned, requires the agreement to provide in substance for the management of the joint facility and the indemnification of the manager.

The respective last sentences of §§ 4.02 and 2.08(a) of the joint agreement state the substance of subsections 6 and 7 of § 390.4. That is all the statute requires. 66 G.A., H.F. 908, § 4 ("In substance, a joint agreement shall", etc.).

Plaintiffs claim, however, that the first sentence of § 4.02 of the joint agreement violates subsections 6 and 7 of § 390.4. That first sentence states:

> *Indemnification Between Parties for Liability.* Each of the Parties hereto agrees to indemnify each of the other Parties from and against liability and loss, damage and expense, including judgments, costs and attorneys' fees by reason of property damage or injuries to or death of any person or persons, expressly including therein (i) any workmen's compensation liability of Iowa Power to its employees, or (ii) liability to any agents, contractors, subcontractors, or consultants, or (iii) liability to any third parties, or (iv) by reason of claims of any and every character, resulting from, arising out of, or connected with the construction, reconstruction, modification, operation, or maintenance of Unit 3 [the joint facility], (or the Iowa Power Common Facilities or the Unit 3 Common Facilities if the same are being wholly or partially used in conjunction with Unit 3 or the Unit 3 Electric Transmission and Substation Facilities), regardless whether caused wholly or partially by the negligence of Iowa Power, or its employees or agents, to the extent that the percentage of its ownership share, as specified in Section 2.01 hereof, bears to the total liability, loss, damage and expense.

While we are not completely free from doubt, we interpret clauses (i), (ii) (iii), and (iv) in this sentence to apply to liabilities of and claims against Iowa Power while carrying out the project for the co-owners. Iowa Power is named in clause (i) and also twice near the conclusion of clause (iv). We interpret the rest of the sentence to apply to all the co-owners including Iowa Power as a co-owner.

Two main relationships will exist under the joint agreement. The relationship of *agent and principal* will exist between Iowa Power and the respective co-owners. The relationship of *tenants in common* will exist among the co-owners. See p. 1 of joint agreement. We therefore proceed to consider this first sentence in § 4.02 of the

joint agreement in light of the two relationships—first as to agent and principal.

■ The sentence deals with indemnity. Indemnity may arise from the *law* (sometimes based on the fiction of an "implied" contract) or, additionally, from *contract*. 41 Am.Jur.2d Indemnity §§ 6, 19; 42 C.J.S. Indemnity §§ 4, 20. As agent for the co-owners, Iowa Power will under the *law* be entitled to indemnification by its principals for proper expenditures made and obligations incurred in the course of the agency. Restatement, Agency 2d §§ 438(2), 439. This right of indemnity does not conflict with subsections 6 and 7 of § 390.4, for the co-owners as principals will merely discharge their own responsibilities. The agent's acts within the scope of the agency will be their acts.

■ But the sentence in § 4.02 goes farther, and appears to grant Iowa Power as agent a right of indemnity which it would not have under the law—e. g., the clause in the sentence, "regardless whether caused wholly or partially by the negligence of Iowa Power. . . ." See Restatement, Agency 2d § 440(a). To exist, this right of indemnity must arise from *contract*, the joint agreement. We thus have the question whether the joint agreement may validly grant such additional right of indemnity in the face of subsections 6 and 7 of § 390.4.

■ We have some qualms about this question but believe the legislature probably intended to permit cities so to contract. The indemnity allowed under § 4.02 is to the extent of the percentage of Cedar Falls' share in the project. Subsection 6 of § 390.4 states that the joint agreement shall provide that a participant—such as Cedar Falls—may be liable only for its own acts "or as principal for the acts of the manager in proportion to its percentage of ownership," and subsection 8 states that the agreement shall provide for "the indemnification of the manager. . . ." An argument can be made that the quoted clauses merely allow the indemnity which the

law grants, but then the clauses would be superfluous in the statute. *State v. Jennie Coulter Day Nursery*, 218 N.W.2d 579, 582 (Iowa) ("We should endeavor to construe our statutes so that no part will be rendered superfluous."); *Maguire v. Fulton*, 179 N.W.2d 508, 510 (Iowa); *Goergen v. State Tax Comm'n*, 165 N.W.2d 782, 786 (Iowa). We are therefore of the view that the clauses allow added contractual indemnity such as the joint agreement gives Iowa Power as agent.

Second, as to the co-owners as tenants in common, the sentence grants broad rights of indemnity inter se. To the extent that the co-owners would have a right of indemnity among themselves under the *law*, we see no problem. There again they would only be discharging their own responsibilities. We do not now attempt to state what those situations would be.

But the sentence appears to go beyond indemnity under law and to grant added contractual indemnity among the co-owners, and this notwithstanding subsection 6 requires the joint agreement to state substantially that a participant may be liable "only for its own acts . . . and shall not be jointly or severally liable for the acts, omissions or obligations of other participants," and subsection 7 requires the joint agreement to state substantially that the interest of a participant in the facility may not be charged with the obligations of another participant. We think this attempt to give the co-owners additional contractual indemnity does not square with the statute.

We thus hold that the first sentence of § 4.02 does not conflict with the statute as to Iowa Power's right of indemnity as agent, but that it does conflict with subsections 6 and 7 of § 390.4 to the extent that it purports to grant rights of indemnity among the co-owners greater than they would have under the law including subsections 6 and 7 themselves.

Finally, original subsection 9 of § 390.4 provided that no participant in a joint

agreement may withdraw without the consent of each participant, so long as a city utility's obligations, payable in whole or part from project revenues, are outstanding.

Section 2.08(b) appears to carry out the mandate of original subsection 9, but § 2.08(c) carves out exceptions. We might have had difficulty reconciling some of those exceptions with original subsection 9, but the legislature amended subsection 9 retrospectively in House File 908 of the 66th General Assembly. The amendment provides that the consent of participants to the withdrawal of another participant may be granted "in the joint agreement," among other ways. The participants gave consent to the exceptions in § 2.08(c) when they executed the joint agreement. Section 2.08(c) does not conflict with subsection 9 as amended.

We thus uphold the statutes involved as against the constitutional attacks plaintiffs lodge against them, we hold that Cedar Falls may proceed under chapter 397 or under §§ 384.80 through 384.94 as it chooses, and we hold that Cedar Falls complied with chapter 390 except in the respect we have pointed out in which the joint agreement violates § 390.4(6) and (7). If the agreement can be renegotiated in a form which complies with those subsections, Cedar Falls may go forward without the necessity of repeating prior proceedings. We enjoin Cedar Falls, however, from going forward with the joint agreement in the present form, and we direct the district court to let a writ issue accordingly.

Appeal costs three-fourths to plaintiffs and one-fourth to Cedar Falls.

Reversed and remanded.

All Justices concur except HARRIS, J., who takes no part.